**SECOND AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**BROADBRIDGE LA LLC**

This Second Amended and Restated Limited Liability Company Agreement (together with the schedules attached hereto, this "<u>Agreement</u>") of BROADBRIDGE LA LLC (the "<u>Company</u>"), is entered into by BROADBRIDGE LA MEMBER LLC, a Delaware limited liability company, as the sole equity member (the "<u>Mem</u>ber"), and C. Anthony Shippam and Gregory S. Harrison, as the Independent Managers (as defined on <u>Schedule A</u> hereto).  Capitalized terms used and not otherwise defined herein have the meanings set forth on <u>Schedule A</u> hereto.

WHEREAS, the Company was formed as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 <u>Del. C.</u> §§ 18-101 <u>et</u> <u>seq</u>.), as amended from time to time (the "<u>Act</u>"), by the filing of a Certificate of Formation with the Secretary of State of the State of Delaware on June 26, 2014, and the entering into of the Operating Agreement of the Company, dated as of August 20, 2014 (the "<u>Original LLC</u> <u>Agreement</u>"), by the Member, as the sole equity member;

WHEREAS, the Member amended and restated the Original LLC Agreement in its entirety and entered into the Amended and Restated Limited Liability Company Agreement of the Company, dated as of June 10, 2016, by the Member, as the sole equity member, and C. Anthony Shippam, as Independent Manager (the "<u>Prior LLC Agreement</u>"); and

WHEREAS, the Member desires to continue the Company as a limited liability company under the Act and to amend and restate the Prior LLC Agreement in its entirety.

NOW, THEREFORE, BE IT RESOLVED, that in consideration of the agreements and obligations hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Member, by execution of this Agreement, hereby continues the Company as a limited liability company, without dissolution, in accordance with the Act and the Prior LLC Agreement, and the Member and the Independent Managers hereby agree to, and hereby do, amend and restate the Prior LLC Agreement as follows:

Section 1.       <u>Name</u>.

The name of the limited liability company continued hereby is BROADBRIDGE LA LLC.

Section 2.       <u>Principal Business Office</u>.

The principal business office of the Company shall be located at c/o Continental Equities Group Inc., 45 North Station Plaza, Great Neck, New York 11021, or such other location as may hereafter be determined by the Member.

Section 3.    <u>Registered Office</u>.

The address of the registered office of the Company in the State of Delaware is c/o Registered Agents Legal Services, LLC, 1013 Centre Road, Suite 403S, Wilmington, Delaware 19805.

Section 4.    <u>Registered Agent</u>.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware are Registered Agents Legal Services, LLC, 1013 Centre Road, Suite 403S, Wilmington, Delaware 19805.

Section 5.    <u>Members</u>.

(a)    The mailing address of the Member is set forth on <u>Schedule B</u> attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of the Original LLC Agreement.  The Member hereby continues the Company as a limited liability company without dissolution.

(b)    Subject to <u>Section 9(c)</u>, the Member may act by written consent.

(c)    Upon the occurrence of any event that causes the Member to cease to be a member of the Company (other than (i) upon continuation of the Company without dissolution upon an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to <u>Sections 21 and 23</u>, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to <u>Sections 22 and 23</u>), each person acting as an Independent Manager pursuant to <u>Section 10</u> shall, without any action of any Person and simultaneously with the Member ceasing to be a member of the Company, automatically be admitted to the Company as a Special Member and shall continue the existence of the Company without dissolution.  No Special Member may voluntarily resign from the Company or transfer its rights as Special Member unless (i) a successor Special Member has been admitted to the Company as Special Member by executing a counterpart to this Agreement, and (ii) such successor has also accepted his or her appointment as Independent Manager pursuant to <u>Section 10</u>; <u>provided</u>, <u>however</u>, that the Special Members shall automatically cease to be members of the Company upon the admission to the Company of a substitute Member.  Each Special Member shall be a member of the Company that has no interest in the profits, losses and capital of the Company and has no right to receive any distributions of Company assets.  Pursuant to Section 18-301 of the Act, a Special Member shall not be required to make any capital contributions to the Company and shall not receive a limited liability company interest in the Company.  A Special Member, in its capacity as Special Member, may not bind the Company.  Except as required by any mandatory provision of the Act, each Special Member, in its capacity as Special Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company.  In order to implement the admission to the Company of each Special Member, each person acting as an Independent Manager pursuant to <u>Section 10</u> shall execute a counterpart to this Agreement.  Prior to its

admission to the Company as Special Member, each person acting as an Independent Manager pursuant to Section 10 shall not be a member of the Company.

Section 6.      Certificates.

Dennis M. Sughrue was designated as an "authorized person" within the meaning of the Act, and executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware.  Upon the filing of the Certificate of Formation with the Secretary of State of the State of Delaware, his powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act.  The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in the State of California and in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7.      Purposes.

The purpose to be conducted or promoted by the Company is to engage in the following activities:

(a)

(i)      to acquire, develop, construct, own, hold, sell, lease, ground lease, transfer, exchange, dispose of, manage, operate or otherwise deal with the real property located at 801 S. Broadway, 826 South Hill Street and 832 South Hill Street, Los Angeles, California (collectively, the "Property");

(ii)      to enter into, execute, deliver and perform its obligations under the Basic Documents to which it is a party and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto;

(iii)      refinancing the Property in connection with a permitted repayment of the Loan; and

(iv)      to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)      The Company, and the Member, or any Manager or Officer on behalf of the Company, may enter into, execute, deliver and perform under the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, manager, Officer or other Person notwithstanding any other provision of this Agreement, or, to the fullest extent permitted by applicable law, the Act or applicable law, rule or regulation.  The foregoing authorization

shall not be deemed a restriction on the powers of the Member or any Manager or Officer to enter into other agreements on behalf of the Company.

Section 8.    Powers.

Subject to Section 9(c), the Company, and the Manager and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act. Subject to Section 7, the Manager has the authority to bind the Company.

Section 9.    Management.

(a)    Manager.  Subject to Section 9(c), the business and affairs of the Company shall be managed by or under the direction of the Manager.  The initial Manager shall be the Member. The Manager does not need to be a Member.  The Manager shall be, and is hereby designated as a "manager" within the meaning of Section 18-101(10) of the Act.  The Manager may resign at any time by giving written notice to the Member.  The Manager may be removed or expelled, with or without cause, at any time by the Member.  Any vacancy caused by the removal, expulsion or resignation of the Manager may be filled by action of the Member.

(b)    Manager as Agent.  To the extent of its powers set forth in this Agreement and subject to Section 9(c), the Manager is an agent of the Company for the purposes of the Company's business, and the actions of the Manager taken in accordance with such powers set forth in this Agreement shall bind the Company.  Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Manager, the Manager may not bind the Company.

(c)    Limitations on the Company's Activities.

(i)    This Section 9(c) is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

(ii)    The Member shall not, so long as any Obligation is outstanding, amend, alter, change or repeal the definition of "Independent Manager" or Sections 5(c), 7, 8, 9, 10, 16, 20, 21, 22, 23, 24, 25, 26, 29 or 31 or Schedule A of this Agreement (collectively, the "Special Purpose Provisions") without the written consent of the Administrative Agent. Subject to this Section 9(c), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 31.  To the fullest extent permitted by applicable law, in the event of any conflict between any of the Special Purpose Provisions and any other provisions of this or any document governing the formation, management or operation of the Company, the Special Purpose Provisions shall control.

(iii) So long as any Obligation is outstanding, notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Member, the Manager, any Officer or any other Person, neither the Member nor the Manager nor any Officer nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Member, the Manager and all of the Independent Managers, to take any Material Action, provided, however, that the Manager, Member, any Officer or any other Person may not vote on, or authorize the taking of, any Material Action, unless there are at least two (2) Independent Managers then serving in such capacity.

(iv) The Manager and the Member shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises; provided, however, that the Company shall not be required to preserve any such right or franchise if: (1) the Manager shall determine that the preservation thereof is no longer desirable for the conduct of its business and that the loss thereof is not disadvantageous in any material respect to the Company and (2) the Rating Agency Condition is satisfied.  So long as any Obligation is outstanding, the Manager also shall cause the Company to:

(A) not engage in any business unrelated to the purposes set forth in Section 7(a);

(B) not have any assets other than the Property and such incidental personal property necessary for the ownership, operation and development of the Property;

(C) to the fullest extent permitted by law, not engage in, seek or consent to, (i) any dissolution, winding up, liquidation, consolidation, merger, or sale of all or substantially all of its assets, (ii) except as permitted under the terms of the Loan Agreement, any transfer of membership interests, or (iii) any amendment of the Certificate of Formation or this Agreement with respect to the matters set forth in this definition without the written consent of Administrative Agent;

(D) intend to remain solvent and intend to pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due, and endeavor to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; provided, however, that in no event shall the foregoing create liability of the Company on account of the Company's insolvency due to insufficiency of capital or require any Member or any other Person to make any

additional capital contribution, advance, loan or any other type of financing to the Company;

(E)  not fail to correct any known misunderstanding regarding its separate identity;

(F)  maintain its accounts (except as otherwise provided to the contrary in the Loan Documents), books and records separate from any other Person and file its own tax returns, except to the extent that it (i) has been or is required to file consolidated tax returns by law or (ii) is treated as a disregarded entity for federal or state tax purposes;

(G)  maintain its own resolutions and agreements, books and records;

(H)  other than as provided in the Loan Agreement and the other Loan Documents, (i) not commingle, its funds or assets with those of any other Person and (ii) not participate in any cash management system with any other Person;

(I)  hold its assets in its own name;

(J)  conduct its business in its name or in a name franchised or licensed to it by an entity other than an Affiliate of the Company, except for services rendered under a business management services agreement with an Affiliate that complies with the terms contained in subparagraph (X) below, as long as the manager, or equivalent thereof, under such business management services agreement holds itself out as an agent of the Company;

(K)  maintain its financial statements, accounting records and other entity documents separate from any other Person and not permit its assets to be listed as assets on the financial statement of any other entity except as permitted by GAAP, provided that any such consolidated financial statement shall contain a note indicating that its separate assets and liabilities are neither available to pay the debts of the consolidated entity nor constitute obligations of the consolidated entity;

(L)  pay its own liabilities and expenses, including the salaries of its own employees (if any), out of its own funds and assets, and maintain a sufficient number of employees (if any) in light of its contemplated business operations; provided, however, that in no event shall the foregoing create liability of the Company on account of the Company's insolvency due to insufficiency of capital or require any member of the Company or any other Person to make any additional capital contribution, advance, loan or any other type of financing to the Company;

(M)     observe in all material respects all limited liability company formalities;

(N)     have no Indebtedness other than (i) the Debt, (ii) the Permitted Debt, and (iii) such other liabilities that are permitted pursuant to the Loan Agreement;

(O)     except in connection with the Loan Documents, not assume or guarantee or become obligated for the debts of any other Person and not hold out its credit as being available to satisfy the obligations of any other Person except as permitted pursuant to the Loan Agreement;

(P)     not acquire obligations or securities of its Member or any other Affiliate;

(Q)     allocate, fairly and reasonably, any overhead expenses that are shared with any Affiliate, including paying for shared office space and services performed by any employee of an Affiliate; <u>provided</u>, <u>however</u>, that in no event shall the foregoing create liability of the Company on account of the Company's insolvency due to insufficiency of capital or require any member of the Company or any other Person to make any additional capital contribution, advance, loan or any other type of financing to the Company;

(R)     maintain and use separate stationery, invoices and checks bearing its name, and all stationery, invoices, and checks utilized by the Company or utilized to collect its funds or pay its expenses shall bear its own name and shall not bear the name of any other entity unless such entity is clearly designated as being the Company's agent;

(S)     unless otherwise specifically permitted under the Loan Documents, not pledge its assets for the benefit of any other Person;

(T)     hold itself out and identify itself as a separate and distinct entity under its own name or in a name franchised or licensed to it by an entity other than an Affiliate of the Company and not as a division or part of any other Person, except for services rendered under a business management services agreement with an Affiliate that complies with the terms contained in <u>subparagraph (X)</u> below, as long as the manager, or equivalent thereof, under such business management services agreement holds itself out as an agent of the Company;

(U)     maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(V)     make loans to any Person or hold evidence of Indebtedness issued by any other Person or entity (other than cash and investment-grade securities issued by an entity that is not an Affiliate of or subject to common ownership with such entity) except that the Company, from time to time in the ordinary course of business, may agree with Tenants under Leases of all or any portion of the Property to make certain tenant improvement allowances available to such Tenants;

(W)     not identify its Member or any Affiliate as a division or part of it, and has not identified itself, and shall not identify itself, as a division of any other Person;

(X)     not enter into or be a party to, any transaction with its Member or Affiliates except (i) in the ordinary course of its business and on terms which are arms-length, commercially reasonable and are substantially similar to those that would be obtained in a comparable arm's-length transaction with an unrelated third party, (ii) in connection with the Loan Agreement, the other Loan Documents and (iii) the Existing Affiliate Agreements;

(Y)     consider the interests of its creditors in connection with all company actions;

(Z)     except as provided in the Loan Documents, not have any of its obligations guaranteed by any Affiliate;

(AA)    comply in all material respects with all of the terms and provisions contained in its organizational documents and this Agreement; and

(BB)    not knowingly consent to any other Person (i) operating its business in the name of such Person, (ii) acting in the name of such Person, (iii) using such Person's stationery or business forms, (iv) holding out its credit as being available to satisfy the obligations of such Person, or (v) having contractual liability for the payment of any of the liabilities of such Person (except pursuant to the limited extent provided under the Loan Documents).

Failure of the Company, or the Member or Manager on behalf of the Company, to comply with any of the foregoing covenants or any other covenants contained in this Agreement shall not affect the status of the Company as a separate legal entity or the limited liability of the Member or the managers.

Section 10.    <u>Independent Manager</u>.

As long as any Obligation is outstanding, the Member shall cause the Company at all times to have at least two (2) Independent Managers who will be appointed by the Member. Each Independent Manager shall be, and is hereby designated as a "manager" within the meaning of Section 18-101(10) of the Act, and shall have only those powers in management of the business and affairs of the Company as shall be specifically provided in this Agreement. No Independent Manager may be removed or replaced except for Cause. To the fullest extent permitted by law, including Section 18-1101(c) of the Act and notwithstanding any duty otherwise existing at law or in equity, the Independent Managers shall consider only the interests of the Company, including its creditors, in acting or otherwise voting on the matters referred to in <u>Section 9(c)(iii)</u>. Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Company's creditors and the Member solely to the extent of its economic interest in the Company but excluding (i) all other interests of the Member, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part), to the fullest extent permitted by law the Independent Managers shall not have any fiduciary duties to the Member, Manager, any Officer or any other Person bound by this Agreement; <u>provided</u>, <u>however</u>, that the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing under applicable law. To the fullest extent permitted by law, any resignation, removal or replacement of any Independent Manager shall not be effective without five (5) Business Days prior written notice to Administrative Agent (in each case, unless such resignation, removal or replacement occurs as a result of the death or incapacity of such Independent Manager, or the termination of such individual's employment as an Independent Manager, in which case the Company shall provide written notice of the removal and replacement of such Independent Manager promptly following such resignation, removal or replacement) accompanied by a statement as to the reasons for such removal, the identity of the proposed replacement Independent Manager, and a certificate that the replacement Independent Manager satisfies the applicable terms and conditions of the definition of "Independent Manager" contained in this Agreement. In addition, no resignation or removal of an Independent Manager, and no appointment of a successor Independent Manager, shall be effective until such successor (i) shall have accepted his or her appointment as an Independent Manager by a written instrument, which may be a counterpart signature page to the Management Agreement, and (ii) shall have executed a counterpart to this Agreement as required by <u>Section 5(c)</u>. In the event of a vacancy in the position of an Independent Manager, the Member shall, as soon as practicable, appoint a successor Independent Manager. All right, power and authority of the Independent Managers shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in this Agreement. No Independent Manager shall at any time serve as trustee in bankruptcy for any Affiliate of the Company.

Section 11.    <u>Officers</u>.

(a)    The Member may, from time to time as it deems advisable, appoint officers of the Company (the "<u>Officers</u>") and assign in writing titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the

delegation to such person of the authorities and duties that are normally associated with that office.

(b)    The Member confirms that all determinations, decisions and actions made or taken by any of the Officers in accordance with this Agreement shall be conclusive and absolutely binding upon the Company, the Member and their respective successors, assigns and personal representatives.

(c)    Persons dealing with the Company are entitled to rely conclusively upon the power and authority of the Officers as set forth in this Agreement.  A certificate of any Officer certifying that such individual is an Officer shall be conclusive evidence that such individual is an Officer, and such individual's actions as an Officer shall be authorized and binding on the Company.

(d)    Officers as Agents.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Manager not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and, subject to Section 9(c), the actions of the Officers taken in accordance with such powers shall bind the Company.

(e)    Duties of Manager and Officers.  Except to the extent otherwise provided herein, any manager and each Officer shall have a fiduciary duty of loyalty and care similar to that of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.    Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Special Members nor any manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Special Member or manager of the Company.

Section 13.    Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.  In accordance with Section 5(c), the Special Members shall not be required to make any capital contributions to the Company.

Section 14.    Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Section 14 are intended to benefit the Member and the Special Members and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor of the Company shall be a third-party beneficiary of this Section 14) and the Member and the Special Members shall not have any duty

or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.    Allocation of Profits and Losses.

The Company's profits and losses shall be allocated to the Member.

Section 16.    Distributions.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Manager.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law or any Basic Document.

Section 17.    Books and Records.

The Member shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business.  The Member shall have the right to examine the Company's books, records and documents during normal business hours.  The Company's books of account shall be kept using the method of accounting determined by the Member.  The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.    Reserved.

Section 19.    Other Business.

The Member, the Manager, the Special Members and any Affiliate of the Member or the Special Members may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.    Exculpation and Indemnification.

(a)    Neither the Member nor the Special Members nor any Officer, manager, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member or the Special Members (collectively, the "Covered Persons") shall, to the fullest extent permitted by law, be liable to the Company or any other Person that is a party to or is otherwise bound by this Agreement, for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct. To the fullest extent permitted by applicable law, including Section 18-1101(e) of the Act, an Independent Manager shall not be liable to the Company, any Member, Manager or Officer or any other Person bound by this Agreement for breach of contract or breach of duties

(including fiduciary duties), unless the Independent Manager acted in bad faith or engaged in willful misconduct.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member and the Special Members shall not have personal liability on account thereof; and provided, further, that so long as any Obligation is outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this Section 20 shall be payable from amounts allocable to any other Person pursuant to the Basic Documents.

(c)    To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)    To the fullest extent permitted by applicable law, a Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)    To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, to the fullest extent permitted by applicable law, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the Company or any other Covered Person. The provisions of this Agreement, to the extent that they eliminate or restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Member and the Special Members to replace such other duties and liabilities of such Covered Person to the fullest extent permitted by applicable law.

(f)    Notwithstanding the foregoing provisions, any indemnification set forth herein shall be fully subordinate to the Obligations and, to the fullest extent permitted by law, shall not

constitute a claim against the Obligations in the event that cash flow in excess of the amount required to pay the Obligations is insufficient to pay such obligation.

(g)    The provisions of this <u>Section 20</u> shall survive any termination of this Agreement.

Section 21.    <u>Assignments</u>.

The Member may assign in whole or in part its limited liability company interest in the Company.  Subject to <u>Section 23</u>, the transferee shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  If the Member transfers all of its limited liability company interest in the Company pursuant to this <u>Section 21</u>, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.  Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22.    <u>Resignation</u>.

So long as any Obligation is outstanding, the Member may not resign, except as permitted under the Basic Documents and if the Rating Agency Condition is satisfied.  If the Member is permitted to resign pursuant to this <u>Section 22</u>, an additional member of the Company shall be admitted to the Company, subject to <u>Section 23</u>, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.    <u>Admission of Additional Members</u>.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing, so long as any Obligation remains outstanding, no additional Member may be admitted to the Company pursuant to <u>Sections 21</u>, <u>22</u> or <u>23</u> unless the Rating Agency Condition is satisfied.

Section 24.    <u>Dissolution</u>.

(a)    Subject to <u>Section 9(c)</u>, the Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.  Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company or that causes the Member to cease to be a member of the Company

(other than (i) upon continuation of the Company without dissolution upon an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to <u>Sections 21 and 23</u>, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to <u>Sections 22 and 23</u>), to the fullest extent permitted by law, the personal representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (i) to continue the Company and (ii) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining member of the Company or the Member in the Company.

(b)     Notwithstanding any other provision of this Agreement, the Bankruptcy or dissolution of the Member or a Special Member shall not cause the Member or Special Member, respectively, to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)     Notwithstanding any other provision of this Agreement, each of the Member and the Special Members waives any right it might have to agree in writing to dissolve the Company upon the Bankruptcy of the Member or a Special Member, or the occurrence of an event that causes the Member or a Special Member to cease to be a member of the Company.

(d)     In the event of dissolution of the Company, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(e)     The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

Section 25.     <u>Waiver of Partition; Nature of Interest</u>.

Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Member and the Special Members hereby irrevocably waives any right or power that such Person might have to cause the Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company.  The Member shall not have any interest in any specific assets of the Company, and the Member shall not have the status of a creditor with respect to any distribution pursuant to <u>Section 16</u> hereof.  The interest of the Member in the Company is personal property.

Section 26.    <u>Benefits of Agreement; No Third-Party Rights</u>.

Notwithstanding any other provision of this Agreement, during the Term of the Loan, Administrative Agent and Lender are intended third-party beneficiaries of the Special Purpose Provisions of this Agreement. Except for Administrative Agent and Lender with respect to the Special Purpose Provisions, none of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member or a Special Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (except as provided in <u>Section 29</u>).

Section 27.    <u>Severability of Provisions</u>.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.    <u>Entire Agreement</u>.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    <u>Binding Agreement</u>.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement, including, without limitation, the Special Purpose Provisions, constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member by the Independent Managers, in accordance with its terms. In addition, the Independent Managers shall be intended beneficiaries of this Agreement.

Section 30.    <u>Governing Law</u>.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    <u>Amendments</u>.

Subject to <u>Section 9(c)</u>, this Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member. Notwithstanding anything to the contrary in this Agreement, so long as any Obligation is outstanding, this Agreement may not be modified, altered, supplemented or amended unless the Rating Agency Condition is satisfied except: (i) to cure any ambiguity or (ii) to convert or supplement any provision in a manner consistent with the intent of this Agreement and the other Basic Documents.

Section 32.    <u>Counterparts</u>.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    <u>Notices</u>.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in <u>Section 2</u>, (b) in the case of the Member, to the Member at its address as listed on <u>Schedule B</u> attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, have duly executed this Agreement as of the  8th day of June, 2018.

**MEMBER:**

**BROADBRIDGE LA MEMBER LLC,**
a Delaware limited liability company

By:    Western LA Holdco LLC,
       a Delaware limited liability company,
       its sole member

       By: _____
       Name: Jack Vangana
       Title:  Co-Manager

**INDEPENDENT MANAGER:**

_____
C. Anthony Shippam

_____
Gregory S. Harrison

**INDEPENDENT MANAGERS**:

_____

**C. ANTHONY SHIPPAM**

_____

**GREGORY S. HARRISON**

SCHEDULE A

Definitions

A.      Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Administrative Agent" means SPT CA FUNDINGS 2, LLC, a Delaware limited liability company.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Second Amended and Restated Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (vii) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated.  The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(l) and 18-304 of the Act.

"Basic Documents" means the Loan Documents and all documents and certificates contemplated thereby or delivered in connection therewith.

"Business Day" has the meaning assigned to that term in the Loan Agreement.

"Cause" has the meaning assigned to that term in the Loan Agreement.

A-1

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware on June 26, 2014, as amended or amended and restated from time to time.

"Company" means BROADBRIDGE LA LLC, a Delaware limited liability company.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Debt" has the meaning assigned to that term in the Loan Agreement.

"Existing Affiliate Agreements" has the meaning assigned to that term in the Loan Agreement.

"GAAP" has the meaning assigned to that term in the Loan Agreement.

"Indebtedness" means with respect to the Company, (i) indebtedness or liability of the Company for borrowed money whether or not evidenced by bonds, debentures, notes or other instruments, or for the deferred purchase price of property or services (excluding trade obligations); (ii) obligations of the Company as lessee under leases which should have been or should be, in accordance with GAAP, recorded as capital leases; (iii) current liabilities of such Person in respect of unfunded vested benefits under plans covered by Title IV of ERISA; (iv) obligations issued for, or liabilities incurred on the account of, the Company; (v) obligations or liabilities of the Company arising under letters of credit, credit facilities or other acceptance facilities; (vi) obligations of the Company under any guarantees or other agreement to become secondarily liable for any obligation of any other Person, endorsements (other than for collection or deposit in the ordinary course of business) and other contingent obligations to purchase, to provide funds for payment, to supply funds to invest in any Person or otherwise to assure a creditor against loss; (vii) obligations of the Company secured by any Lien on any property of the Company, whether or not the obligations have been assumed by the Company; or (viii) obligations of the Company under any interest rate or currency exchange agreement.

"Independent Manager" means a natural person who (A) has prior experience as an independent director, independent manager or independent member with at least three (3) years of employment experience and who is provided by CT Corporation, Corporation Service Company, National Registered Agents, Inc. (or its affiliate NRAI Entity Services, LLC), Wilmington Trust Company, Stewart Management Company, Lord Securities Corporation or, if none of those companies is then providing professional independent directors, independent managers or independent members, another nationally-recognized company reasonably approved by Administrative Agent, in each case, that is not an Affiliate of the Company and that provides professional independent directors, independent managers, independent members and other corporate services in the ordinary course of its business, and (B) is duly appointed as an

A-2

independent manager of the Company and for the five (5)-year period prior to his or her appointment as independent manager has not been and during the continuation of his or her serving as independent manager will not be, any of the following:  (i) a member (other than a Special Member of the Company), manager (other than an Independent Manager of the Company), director, trustee, officer, employee, attorney, or counsel of any of the Company or its Affiliates; (ii) a creditor, customer, supplier, service provider (including provider of professional services) or other Person who derives any of its purchases or revenues from its activities with the Company or its Affiliates (other than a member, manager, director, trustee, officer, employee, attorney or counsel of a nationally-recognized company that routinely provides professional independent directors, independent managers and independent members and other corporate services to the Company or its Affiliates in the ordinary course of business); (iii) a direct or indirect legal or beneficial owner in the Company or any of its Affiliates; (iv) a member of the immediate family of any member, manager, employee, attorney, customer, supplier or other Person referred to above; and (v) a Person Controlling or under the common Control of anyone listed in <u>clauses (i)</u> through <u>(iv)</u> above.  A natural person who otherwise satisfies the foregoing definition but does not satisfy the requirements of <u>clause (i)</u> by reason of being the independent director, independent manager or independent member of a "single purpose entity" affiliated with the Company shall be qualified to serve as an Independent Manager hereunder, <u>provided</u> that the fees that such individual earns from serving as an independent director, independent manager or independent member of affiliates of the Company in any given year constitute in the aggregate less than five percent (5%) of such individual's annual income for that year.  For purposes of this paragraph, a "single purpose entity" is an entity, whose organizational documents contain restrictions on its activities and impose requirements intended to preserve such entity's separateness that are substantially similar to the Single Purpose Entity definition in the Loan Agreement.

"<u>Lender</u>" means SPT CA FUNDINGS 2, LLC, a Delaware limited liability company, as administrative agent for itself and the other lenders party to the Loan Agreement, together with their respective successors and assigns.

"<u>Loan</u>" means the loan by Lender to the Company.

"<u>Loan Agreement</u>" means the Loan Agreement entered into by the Company, as the borrower, Lender, and Administrative Agent on or about the date hereof.

"<u>Loan Documents</u>" has the meaning assigned to that term in the Loan Agreement.

"<u>Leases</u>" has the meaning assigned to that term in the Loan Agreement.

"<u>Lien</u>" has the meaning assigned to that term in the Loan Agreement.

"<u>Management Agreement</u>" means the agreement of the Independent Managers in the form attached hereto as <u>Schedule C</u>.  The Management Agreement shall be deemed incorporated into, and a part of this Agreement.

"<u>Manager</u>" means BROADBRIDGE LA MEMBER LLC, a Delaware limited liability company, as the initial manager of the Company, and includes any Person designated as a

Manager of the Company pursuant to the provisions of this Agreement; <u>provided</u>, <u>however</u>, the term "Manager" shall not include the Independent Managers.

"<u>Material Action</u>" means to not institute proceedings to have the Company be adjudicated bankrupt or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a voluntary bankruptcy petition with respect to the Company, to file or consent to the filing of any petition to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute or other laws relating to the relief from debts or the protection of debtors generally, with respect to the Company, or to seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or all or a portion of its property, or to make any assignment for the benefit of creditors of the Company, or to admit in writing the Company's inability to pay its debts generally as they become due, or to take action in furtherance of any such actions.

"<u>Member</u>" means BROADBRIDGE LA MEMBER LLC, a Delaware limited liability company, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company; <u>provided</u>, <u>however</u>, the term "Member" shall not include the Special Members.

"<u>Obligations</u>" shall mean the indebtedness, liabilities and obligations of the Company under or in connection with the Basic Documents or any related document in effect as of any date of determination.

"<u>Officer</u>" means an officer of the Company described in <u>Section 11</u>.

"<u>Permitted Debt</u>" has the meaning assigned to that term in the Loan Agreement.

"<u>Person</u>" means any individual, corporation, partnership, joint venture, limited liability company, limited partnership, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

"<u>Property</u>" has the meaning assigned to that term in <u>Section 7(a)</u>.

"<u>Rating Agency</u>" has the meaning assigned to that term in the Basic Documents.

"<u>Rating Agency Condition</u>" means (i) with respect to any action taken at any time before the loan evidenced and secured by the Basic Documents has been sold or assigned to a securitization trust, that the lender thereunder has consented in writing to such action, and (ii) with respect to any action taken at any time after such loan has been sold or assigned to a securitization trust, that each Rating Agency shall have been given ten (10) days prior notice thereof and that each of the Rating Agencies shall have notified the Company in writing that such action will not result in a reduction or withdrawal of the then current rating by such Rating Agency of any of securities issued by such securitization trust.

"<u>Special Member</u>" means, upon such person's admission to the Company as a member of the Company pursuant to <u>Section 5(c)</u>, a person acting as Independent Manager, in such person's

capacity as a member of the Company.  A Special Member shall only have the rights and duties expressly set forth in this Agreement.

"<u>Tenant</u>" has the meaning assigned to that term in the Loan Agreement.

"<u>Term</u>" has the meaning assigned to that term in the Loan Agreement.

B.      Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms.  The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."  The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision.  The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement.  All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

NY 247395753v1

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Membership Interest |
|---|---|---|---|
| BROADBRIDGE LA MEMBER LLC, a Delaware limited liability company | c/o Continental Equities Group Inc., 45 North Station Plaza, Suite 402, Great Neck, New York 11021 | $100.00 | 100% |

B-1

SCHEDULE C

Management Agreement

June 8, 2018

BROADBRIDGE LA LLC
c/o Continental Equities Group Inc.
45 North Station Plaza, Suite 402
Great Neck, New York 11021

      Re:      Management Agreement --  BROADBRIDGE LA LLC

Ladies and Gentlemen:

For good and valuable consideration, each of the undersigned Persons, who have been designated as Independent Managers of BROADBRIDGE LA LLC, a Delaware limited liability company (the "Company"), in accordance with the Second Amended and Restated Limited Liability Company Agreement of the Company, dated as of the date hereof, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

1.      Each of the undersigned accepts such Person's rights and authority as an Independent Manager under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as an Independent Manager under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as an Independent Manager is designated or until such Person's resignation or removal as an Independent Manager in accordance with the LLC Agreement.  Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

2.      So long as any Obligation is outstanding, each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining a case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

3.      THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

NY 247395753v1

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
C. Anthony Shippam

_____
Gregory S. Harrison

C-3

*DEL 408351136v1*