# LIMITED LIABILITY COMPANY AGREEMENT
## OF
### BROADBRIDGE LA MEMBER LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "**Agreement**") of BROADBRIDGE LA MEMBER LLC (the "**Company**"), dated as of August 20, 2014, is entered into by Western LA Holdco LLC, as the sole member (the "**Member**"), and Colleen DeVries and John Morrissey, as initial Independent Managers (as defined in Schedule A hereto). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

**WHEREAS**, the Company was formed pursuant to and in accordance with the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 et seq., (as amended from time to time, the "**Act**") by Dennis M. Sughrue, an authorized person of the Company, causing the filing of the certificate of formation of the Company (the "**Certificate of Formation**") with the Secretary of State of the State of Delaware on June 26, 2014.

**NOW, THEREFORE**, the Member and Colleen DeVries and John Morrissey hereby agree as follows:

1.    **NAME.**

The name of the limited liability company formed hereby is Broadbridge LA Member LLC.

2.    **PRINCIPAL BUSINESS OFFICE.**

The principal business office of the Company shall be located at c/o Waterbridge Capital LLC, 590 Madison Avenue, 34th Floor, New York, New York 10022 or such other location as may hereafter be determined by the Member.

3.    **REGISTERED OFFICE.**

The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.    **REGISTERED AGENT.**

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.    **MEMBER**.  The mailing address of the Member is set forth on <u>Schedule B</u> attached hereto.  The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

6.    **CERTIFICATES**.

(a)    Dennis M. Sughrue, is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware.  Such filing is hereby ratified and confirmed in all respects.  Upon the filing of the Certificate of Formation with the Secretary of State of the State of Delaware, his powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act.  The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) permitted or required to be filed with the Secretary of State of the State of Delaware.  The Member or an Officer shall execute, deliver and file any other certificates, applications, instruments and other documents (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

(b)    The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

7.    **PURPOSE**.

(a)    The primary purpose and nature of the business to be conducted by the Company shall be to engage, directly or indirectly, in the following activities:

(i)    acquiring and/or directly or indirectly causing Broadbridge LA LLC (the "<u>Property Owner</u>") to acquire all or any portion of the real property located at 801 South Broadway, Los Angeles, California 90014 (the "<u>Property</u>") and to, directly or indirectly, own, hold, lease improve, renovate, develop, redevelop, finance, sell, transfer, exchange, operate, manage and otherwise deal with the Property; and

(ii)    to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)    The Company is hereby authorized to execute, deliver and perform, and the Member on behalf of the Company is hereby authorized to execute and deliver, the Loan Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement.  The foregoing authorization shall not be deemed a restriction on the powers of the Member to enter into other agreements on behalf of the Company.

1345809-v10

8.    **POWERS.**

Subject to Section 9(d), the Company, and the Member on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 hereof and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

9.    **MANAGEMENT.**

(a)    Subject to Section 9(d), the business and affairs of the Company shall be managed by or under the direction of the Member. Subject to Section 10, the Member may determine at any time in its sole and absolute discretion the number of Independent Managers. The initial Independent Managers designated by the Member are Colleen DeVries and John Morrissey.

(b)    Subject to Section 9(d), the Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise.

(c)    To the extent of its powers set forth in this Agreement, and subject to Section 9(d), the Member is the agent of the Company for the purpose of the Company's business, and the actions of the Member taken in accordance with such powers set forth in this Agreement shall bind the Company.

(d)    Limitation on Company's Activities.

1.    This Section 9(d) is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

2.    The Members shall not, so long as the Company's obligations under the Loan are outstanding, amend, alter, change, or repeal the definition of "Independent Manager" or Section 7, 8, 9, 10, 16, 18, 19, 20, 21, 22, 23, 24 or 29 or Schedule A of this Agreement (collectively, the "Special Purpose Provisions") without the unanimous written consent of the Independent Managers. Subject to this Section 9(d), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 29.

3.    Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Member, or any other Person, so long as any obligation under the Loan is outstanding, neither the Member nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Member and all Independent Managers, or take any Material Action, provided, however, that, so long as any obligation under the Loan is outstanding, the Member may not authorize the taking of any Material Action, unless there are at least two Independent Managers then serving in such capacity and each has consented to such action.

4.  So long as the Loan is outstanding, the Company shall not, directly or indirectly, and shall not cause the Property Owner (as hereinafter defined) to:

     i.     engage in any business or activity other than the acquisition, ownership, operation and maintenance of the Property (in the case of the Property Owner), and the acquisition and ownership of the membership interests in Property Owner (in the case of the Company) , and activities incidental thereto;

     ii.     acquire or own any material asset other than (i) the Property, and (ii) such incidental personal property as may be necessary for the operation of the Property, in the case of the Property Owner; and the membership interests in Property Owner, in the case of the Company.

     iii.     subject to the fullest extent permitted by law, merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without, in each case, Lender's consent;

     iv.     fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or, without the prior written consent of Lender, amend, modify, terminate or fail to comply with the provisions of this Agreement, Certificate of Formation or similar organizational documents, as the case may be;

     v.     own any subsidiary or make any investment in or acquire the obligations or securities of any other person or entity without the consent of Lender;

     vi.     commingle its assets with the assets of the Member or Independent Managers, Affiliates or any other person or entity;

     vii.     incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than trade payables incurred in the ordinary course of business;

     viii.     fail to pay its debts and liabilities from its own assets; provided that the foregoing shall not require any direct or indirect member, partner or shareholder of the Company to make any additional capital contributions or equity infusions to the Company;

     ix.     fail to maintain its records, books of account and bank accounts separate and apart from those of the Member, principals and affiliates of the Company, the affiliates of the Member, and any other Person;

     x.     enter into any contract or agreement with any member, principal or Affiliate of the Company, any guarantor of all or a portion of the Loan (a "**Guarantor**"), or any general partner, member, principal or affiliate thereof, except as expressly permitted under the Loan Documents and upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any

general partner, member, principal or affiliate of the Company, any Guarantor or indemnitor, or any general partner, member, principal or affiliate thereof;

        xi.      seek dissolution or winding up, in whole or in part;

        xii.      fail to correct any known misunderstandings regarding the separate identity of the Company;

        xiii.      hold itself out to be responsible (or pledge its assets as security) for the debts of another person, other than pursuant to the Accommodation Pledge Agreement in favor of Lender;

        xiv.      make any loans or advances to any third party, including the Member, any principal or affiliate of the Company, or any general partner, member, principal or affiliate thereof; provided, however that the Company shall be able to make capital contributions to the Property Owner.

        xv.      fail to file its own tax returns or to use separate stationary, invoices and checks;

        xvi.      agree to, enter into or consummate any transaction which would have the effect of substantially consolidating the Company into or its parents or affiliates under at law or equity;

        xvii.      fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the entity with which such other party is transacting business, or (ii) to suggest that the Company is responsible for the debts of any third party (including the Member, any principal or affiliate of the Company, or any general partner, member, principal or affiliate thereof);

        xviii.      fail to allocate fairly and reasonably among the Company and any third party (including, without limitation, any Guarantor) any overhead for shared office space;

        xix.      fail to pay the salaries of its own employees and maintain a sufficient number of employees for its contemplated business operations;

        xx.      fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; provided that the foregoing shall not require any direct or indirect member, partner or shareholder of the Company to make any additional capital contributions or equity infusions to the Company;

        xxi.      file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors;

xxii.        share any common logo with or hold itself out as or be considered as a department or division of (i) principal, member or affiliate of the Company, (ii) any affiliate of a member of the Company, or (iii) any other Person; or

xxiii.        fail at any time to have an Independent Manager whose vote is required for any Material Action.

## 10.    INDEPENDENT MANAGER.

So long as the Company's obligations under the Loan are outstanding, the Member shall cause the Company at all times to have at least two Independent Managers who will be appointed by the Member. To the fullest extent permitted by law, including Section 18-1101(c) of the Act, the Independent Managers shall consider only the interests of the Company, including its respective creditors, in acting or otherwise voting on the matters referred to in Section 9(d)(3). In the event of a vacancy in the position of Independent Manager, the Member shall, as soon as practicable, appoint a successor Independent Manager. Except as provided in the second sentence of this Section 10, (including duties to the Member and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Member, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part), the Independent Managers shall not have any fiduciary duties to the Member, any Officer or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing. To the fullest extent permitted by law, including Section 18-1101(e) of the Act, an Independent Manager shall not be liable to the Company, the Member or any other Person bound by this Agreement for breach of contract or breach of duties (including fiduciary duties), unless the Independent Manager acted in bad faith or engaged in willful misconduct. Subject to the other provisions of this Section 10, the Independent Managers may be removed or replaced by the Member only for Cause. No resignation of an Independent Manager permitted by the preceding sentence shall be effective until (1) the Company has provided the Lender with five (5) business days' prior written notice of such resignation, and (2) a successor Independent Manager is appointed and such successor shall have accepted his or her appointment as an Independent Manager by a written instrument. In the event of a vacancy in the position of Independent Manager, the Member shall, as soon as practicable, appoint a successor Independent Manager. Notwithstanding anything to the contrary contained in this Agreement, no Independent Manager shall be removed or replaced unless the Company provides the Lender with no less than five (5) business days' prior written notice of (a) any proposed removal of such Independent Manager, together with a statement as to the reasons for such removal, and (b) the identity of the proposed replacement Independent Manager, together with a certification that such replacement satisfies the requirements for a Independent Manager set forth in this Agreement. All right, power and authority of the Independent Managers shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in this Agreement. No Independent Manager shall at any time serve as trustee in bankruptcy for any Affiliate of the Company.

11.    **OFFICERS.**

(a)    The Member may, from time to time as it deems advisable, appoint officers of the Company (the "**Officers**") and assign in writing titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.

(b)    The Member confirms that all determinations, decisions and actions made or taken by any of the Officers in accordance with this Agreement shall be conclusive and absolutely binding upon the Company, the Member and their respective successors, assigns and personal representatives.

(c)    Persons dealing with the Company are entitled to rely conclusively upon the power and authority of the Officers as set forth in this Agreement. A certificate of any Officer certifying that such individual is an Officer shall be conclusive evidence that such individual is an Officer, and such individual's actions as an Officer shall be authorized and binding on the Company.

12.    **LIMITED LIABILITY.**

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Officer shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Officer of the Company.

13.    **CAPITAL CONTRIBUTIONS.**

The Member has contributed to the Company property of an agreed value as listed on Schedule B annexed hereto.

14.    **ADDITIONAL CONTRIBUTIONS.**

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member. To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Agreement, including this Section 14, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

1345809 v10

15. **ALLOCATION OF PROFITS AND LOSSES.**

The Company's profits and losses shall be allocated to the Member.

16. **DISTRIBUTIONS.**

(a)    The Member shall not be entitled to interest on its capital contributions to the Company or have the right to distributions or the return of any contribution to the capital of the Company, except for distributions in accordance with this Section 16 or upon dissolution of the Company in accordance with Section 20. To the fullest extent permitted by law, the Member shall not be liable for the return of any such amounts. Notwithstanding any provision in this Agreement to the contrary, the Company shall not make a distribution to the Member on account of its interest in the Company if such distribution would violate the Loan Documents, the Act or other applicable law.

(b)    Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

17. **BOOKS AND RECORDS.**

The Member shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The Member shall have the right to examine the Company's books, records and documents during normal business hours. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

18. **EXCULPATION AND INDEMNIFICATION.**

(a)    To the fullest extent permitted by applicable law, neither the Member, nor any Officer nor any officer, director, employee, agent or Affiliate of the foregoing (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 18 by the Company shall be provided out of and to the extent of Company assets only, and the Member, Officers or Manager shall not have personal liability on account thereof;

and *provided further,* that so long as any of the Company's obligations under the Loan are outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this Section 18 shall be payable from amounts allocable to any other Person pursuant to the Loan Documents.

(c)    To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 18.

(d)    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)    The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its Member otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)    The foregoing provisions of this Section 18 shall survive any termination of this Agreement.

## 19.    ASSIGNMENTS.

Subject to Section 21 and the Loan Documents, including, but not limited to Section 5.16 of the Loan Agreement, the Member may assign its limited liability company interest in the Company.  Subject to Section 21, the transferee shall execute and deliver to the Company an instrument whereby it agrees that it shall be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 19, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

## 20.    RESIGNATION.

So long as any of the Company's obligations under the Loan are outstanding, neither the Member may resign, except as expressly permitted under the Loan Documents.  If the Member is permitted to resign pursuant to this Section 20, an additional member of the Company shall be admitted to the Company, subject to Section 21, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  Such admission shall be deemed effective

1345809 v10

immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

## 21. ADMISSION OF ADDITIONAL MEMBERS.

(a)     One or more additional member(s) may be admitted to the Company with the written consent of the Member; provided, however, that, notwithstanding the foregoing, so long as the Company's obligations under the Loan are outstanding, no additional member may be admitted to the Company except as permitted under the Loan Documents. Upon the admission to the Company of any additional member(s), if the Company then has two or more members, the members shall cause this Agreement to be amended and restated to reflect the admission of such additional member(s) and the initial capital contribution, if any, of such additional member(s) and the intention of the members to cause the Company to be classified as a partnership for United States federal, state and local income tax purposes, and to include such other provisions as the members may agree to reflect the change of status of the Company from a single member limited liability company to a limited liability company with two or more members.

(b)     Notwithstanding anything to the contrary contained herein, for so long as any obligations remain outstanding under the Loan, the Member shall not, without the prior written consent of Lender, issue and shall not permit the issuance of any additional limited liability company interests of the Company other than its initial issuance of limited liability company interests issued on or prior to the date of this Agreement.

## 22. ADMISSION OF ADDITIONAL MEMBERS IN PROPERTY OWNER.

Upon a foreclosure, sale or other transfer of the limited liability company interests pursuant to that certain Pledge and Security Agreement, dated as of August 20, 2014 (the "Pledge Agreement"), by the Company and Lender, the holder of such limited liability company interests shall, upon the execution of a counterpart to this Agreement, automatically be admitted as member of the Property Owner upon such foreclosure, sale or other transfer, with all of the rights and obligations of the Company hereunder, subject to the limitations on transferability of such interests as described in this Section 22. The Company, as a member of the Property Owner, acknowledges that the pledge of the limited liability company interest in the Property Owner made by the Company, as a member of the Property Owner, in connection with the Pledge Agreement shall be a pledge not only of profits and losses of the Property Owner, but also a pledge of all rights and obligations of the Company as a member of the Property Owner. Upon a foreclosure, sale or other transfer of the limited liability company interests of the Property Owner pursuant to the Pledge Agreement, the successor member may transfer its interests in the Property Owner, subject to this Section 22. Notwithstanding any provision in the Act or any other provision contained herein to the contrary, the Company shall be permitted to pledge and, upon any foreclosure of such pledge in connection with the admission of Lender as a member, to transfer to Lender its rights and powers to manage and control the affairs of the Property Owner pursuant to the terms of the Pledge Agreement. Upon the exercise of its rights under the Pledge Agreement, Lender shall have, among its other powers, the right to manage the business and affairs of the Property Owner and the Member shall no longer have any rights pursuant to this Agreement.

1345809 v10

## 23.    DISSOLUTION.

(a)    The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act. Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company or that causes the Member to cease to be a member of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to Section 21, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to Sections 20 and 21), to the fullest extent permitted by law, the personal representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (i) to continue the Company and (ii) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining member of the Company or the Member in the Company.

(b)    Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)    Notwithstanding any other provision of this Agreement, the Member waives any right it might have to agree in writing to dissolve the Company upon the Bankruptcy of the Member, or the occurrence of an event that causes the Member to cease to be a member of the Company.

(d)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(e)    The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

## 24.    WAIVER OF PARTITION; NATURE OF INTEREST.

Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Member and the Independent Managers hereby irrevocably waives any right or power that such Person might have to cause the Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law

1345809 v10

or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company. The Member shall not have any interest in any specific assets of the Company, and the Member shall not have the status of a creditor with respect to any distribution pursuant to Section 16 hereof. The interest of the Member in the Company is personal property.

## 25.   BENEFITS OF AGREEMENT; NO THIRD-PARTY RIGHTS.

Except for the Lender with respect to the Special Purpose Provisions, none of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

## 26.   OTHER BUSINESS.

Notwithstanding any duty otherwise existing at law or in equity, the Member, the Independent Managers and any Affiliate or employer of the Member or the Independent Managers may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

## 27.   SEVERABILITY OF PROVISIONS.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

## 28.   ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

## 29.   GOVERNING LAW.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

## 30.   AMENDMENTS.

Subject to Section 9(d), this Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Notwithstanding anything to the contrary in this Agreement, so long as the Company's obligations under the Loan are outstanding, this Agreement may not be modified, altered, supplemented or amended except: (i) to cure any ambiguity or (ii) to convert or supplement any provision in a manner consistent with the intent of this Agreement and the Loan Documents.

## 31.    BINDING AGREEMENT.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement, including, without limitation, Sections 7, 8, 9, 10, 18, 19, 20, 21, 23, 25, 30 and 31, constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member by the Independent Managers, in accordance with its terms.   In addition, the Independent Managers shall be intended beneficiaries of this Agreement.

## 32.    NOTICES.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

**[SIGNATURE PAGE FOLLOWS]**

1345809 v10

13

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the day and year first above written.

THE MEMBER:

WESTERN LA HOLDCO LLC

By: JS Western Holdco Member LLC,
   its managing member

By:_____
Name: Joel Schreiber
Title:　Sole Member

INDEPENDENT MANAGERS:

_____
COLLEEN DEVRIES

_____
JOHN MORRISSEY

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Limited Liability Company Agreement as of the day and year first above written.

THE MEMBER:

WESTERN LA HOLDCO LLC

By: _____
Name: Joel Schreiber
Title: Manager

INDEPENDENT MANAGERS:

_____
COLLEEN DEVRIES

_____
JOHN MORRISSEY

Signature Page to the LLC Agreement of Broadbridge LA Member LLC

**SCHEDULE A**

**DEFINITIONS**

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"**Act**" has the meaning set forth in the preamble to this Agreement.

"**Affiliate**" means any Person, other than the Company, (A) that owns beneficially, directly or indirectly, any interest in the Company or any Member, or (B) that controls or is under common control with the Company or any Member. (As used in this definition or in any other provision of this Agreement, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise, and "controlled" and "controlling" have corresponding meanings.)

"**Agreement**" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"**Bankruptcy**" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"**Cause**" shall mean, with respect to an Independent Manager, (i) acts or omissions by such Independent Manager that constitute willful disregard of, or gross negligence with respect to, such Independent Manager's duties, (ii) such Independent Manager has engaged in or has been charged with or has been indicted or convicted for any crime or crimes of fraud or other acts constituting a crime under any law applicable to such Independent Manager, (iii) such Independent Manager has breached its fiduciary duties of loyalty and care as and to the extent of such duties set forth in this Agreement, (iv) there is a material increase in the fees charged by such Independent Manager or a material change to such Independent Manager's terms of service,

(v) such Independent Manager is unable to perform his or her duties as Independent Manager due to death, disability or incapacity, or (vi) such Independent Manager no longer meets the definition of Independent Manager.

"**Certificate of Formation**" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware on June 26, 2014, as amended or amended and restated from time to time.

"**Company**" means Broadbridge LA Member LLC, a Delaware limited liability company.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"**Covered Persons**" has the meaning set forth in Section 18(a) hereof.

"**Independent Manager**" means a natural person who, for the five-year period prior to his or her appointment as Independent Manager has not been, and during the continuation of his or her service as Independent Manager is not: (A) a direct or indirect legal or beneficial owner in the Company, Member or any of its Affiliates; (B) a creditor, supplier, employee, officer, director, family member, manager or contractor of the Company, Member or any of its Affiliates; (C) a customer or any other Person who purchases any goods or services from or derives any revenues from its activities with the Company, Member or any of its Affiliates (other than customary fees paid to an Independent Manager provided by a corporate services company that provides independent managers in the ordinary course of its business); (D) a Person who controls, directly or indirectly the Company, Member or any of its Affiliates or any owner, customer, creditor, supplier, employee, officer, director, manager or contractor of the Company, Member or any of its Affiliates; or any Person under common control with any such owner, customer, creditor, supplier, employee, officer, director, manager or contractor supplier or other Person; (E) an attorney, counsel or accountant to the Company, Member or any of its Affiliates; or (F) a member of the immediate family of any such owner, customer, creditor, supplier, employee, officer, director, manager or contractor.

"**Lender**" has the assigned meaning as set forth in the definition of Loan Documents.

"**Loan**" shall mean the indebtedness, liabilities and obligations of Broadbridge LA LLC under or in connection with the Loan Documents.

"**Loan Documents**" means that certain loan agreement ("**Loan Agreement**"), dated as of August 20, 2014, by and between the Broadbridge LA LLC, as borrower, and Canpartners Realty Holding Company IV LLC, as lender, (the "**Lender**") and all documents and certificates contemplated thereby or delivered in connection therewith.

1345809 v10

"**Material Action**" means any consolidation or merger of the Company or the Member with or into any Person, or any sale of all or substantially all of the assets of the Company or the Member (except in the case where the Loan is being concurrently repaid in full), or the institution of proceedings to have the Company or the Member adjudicated bankrupt or insolvent, or any consent to the institution of bankruptcy or insolvency proceedings against the Company or the Member or the filing of any petition seeking, or consent to, reorganization or relief with respect to the Company or the Member under any applicable federal or state law relating to bankruptcy, or any consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or the Member or a substantial part of its property, or any assignment for the benefit of creditors of the Company or the Member, or admission in writing of the Company's or the Member's inability to pay its debts generally as they become due, or any action in furtherance of any such action, or to the fullest extent permitted by law, any dissolution or liquidation of the Company or the Member.

"**Member**" means Western LA Holdco LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"**Officer**" means an officer of the Company as described in Section 11 hereof.

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

"**Property Owner**" means Broadbridge LA LLC, a Delaware limited liability company.

Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

## SCHEDULE B

### MEMBER

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|------|-----------------|--------------------------------------|-----------------------------------|
| Western LA Holdco LLC | c/o Waterbridge Capital LLC, 590 Madison Avenue 34th Floor New York, New York 10022 | $100 | 100% |

1345809 v10

EXHIBIT I



PAGE  1

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "BROADBRIDGE LA MEMBER LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWELFTH DAY OF AUGUST, A.D. 2014.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "BROADBRIDGE LA MEMBER LLC" WAS FORMED ON THE TWENTY-SIXTH DAY OF JUNE, A.D. 2014.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.

5559954  8300

141059455

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1612033

DATE: 08-12-14

1346940 v4
17994.00022

# EXHIBIT J

## State of California
### Secretary of State

CERTIFICATE OF STATUS

ENTITY NAME:  BROADBRIDGE LA MEMBER LLC

FILE NUMBER:          201418210257
REGISTRATION DATE:   08/30/2014
TYPE:                 FOREIGN LIMITED LIABILITY COMPANY
JURISDICTION:         DELAWARE
STATUS:               ACTIVE (GOOD STANDING)

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

The records of this office indicate the entity is qualified to transact intrastate business in the State of California.

No information is available from this office regarding the financial condition, business activities or practices of the entity.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of August 11, 2014.

DEBRA BOWEN
Secretary of State

SYP

NP-25 (REV 1/2007)

1346940 v4
17994.00022

EXHIBIT K

*Delaware*

PAGE 1

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "BROADBRIDGE LA LLC", FILED IN THIS OFFICE ON THE TWENTY-SIXTH DAY OF JUNE, A.D. 2014, AT 5:53 O'CLOCK P.M.

5559940  8100

140948152

You may verify this certificate online at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1530496

DATE: 07-14-14

1346940 v4
17994.00022

06/26/2014 17:53     FROM: LLC TO STR JOSEF STRAUSS          Page: 2/2

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 05:53 PM 06/26/2014*
*FILED 05:53 PM 06/26/2014*
*SRV 140891615 - 5559949 FILE*

# STATE *of* DELAWARE
## LIMITED LIABILITY COMPANY
## CERTIFICATE *of* FORMATION

**FIRST:** The name of the limited liability company is:

### Broadbridge LA LLC

**SECOND:** The address of its registered office in the State of Delaware is 1013 Centre Road, Suite 403S, Wilmington, Delaware 19805. The name of its registered agent at such address is Registered Agents Legal Services, LLC.

**In Witness Whereof,** the undersigned have executed this Certificate of Formation this 26th day of June, 2014.

By: /s/ Joel Schreiber
_____
Authorized Person (s)

Name: Joel Schreiber