UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

Broadbridge LA LLC,

                    Debtor.
-----------------------------------------------------------x

Hearing Date and Time:
October 13, 2022 at 10:30 a.m.

Chapter 11

Case No. 22-72048-LAS

### DECLARATION OF JOEL SCHREIBER IN OPPOSITION TO MOTION TO DISMISS CHAPTER 11 CASE

Joel Schreiber declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.    I am the managing member of Broadbridge LA LLC (the "Debtor") and as such I am fully familiar with the facts and circumstances described herein. I make this Declaration in opposition to the motion filed by Museum Building Holdings LLC (the "Secured Creditor") seeking to dismiss this Chapter 11 case [ECF No. 28]

2.    I believed in good faith that I had the requisite authority to file the petition on behalf of the Company on August 9, 2022. The basis of my authority was set out in the company resolution that I signed and filed with the Chapter 11 petition. A copy of the resolution, which lays out my authority in detail, together with copies of the relevant operating agreements, are collectively annexed hereto as Exhibit "A".

3.    While Jack Jangana and his sisters, Jenny Haim and Joyce Reiss (collectively, the "Jangana Family") are also co-members of Western LA Holdco LLC (45%), in my view their refusal to consent to the Chapter 11 filing was unreasonable and designed to promote their personal interests. Both prior to and after the Chapter 11 filing there have been extensive negotiations between me and the Jangana Family regarding a buyout of their interests. I have reached an agreement in principle to buy their interest pursuant to a written agreement which has

1

been drafted and sent to the Secured Creditor's counsel for review and consent. A copy of this email transmission with the Secured Creditor is annexed as Exhibit "B". The document has been signed by me and by the Jangana Family this evening, and is annexed as part of Exhibit "B". I believe that the buyout resolves any residual issues relating to my authority.

4. I appreciate that the Jangana Family were on the fence, so to speak, regarding the Chapter 11 filing. However, during our conversations, various family members indicated to me that I did not need their consent to seek bankruptcy relief.

5. Insofar as the independent managers are concerned, I never had any direct dealings with any independent managers either at the Member or Property level. We did give notice at the member level to Colleen DeVries. After the Chapter 11 filing we became aware of other independent managers at the Property level and provided information concerning the bankruptcy and the issues raised by the Secured Creditor in its dismissal motion. A letter was sent to C. Anthony Shippam and Gregory S. Harrison, a copy of which is attached hereto as Exhibit "C". In response, the Debtor's bankruptcy counsel received a communication from Mr. Shippam that he "fail[ed] to see how Stewart Management Company or me, individually, are involved" and apparently Mr. Shippam and his firm were never actually engaged. A copy of the email from Mr. Shippam is annexed hereto as Exhibit "D". Mr. Shippam's email only reinforces the Debtor's position that the purported independent managers have no real involvement with the Debtor.

6. Perhaps most importantly, I have been negotiating very hard to obtain a viable purchaser for the Debtor's property. The Debtor has received a strong expression of interest and negotiated a proposed contract to sell the property for $325 million to a special purpose entity

sponsored by Quintin E. Primo III. Mr. Primo is the head of Capri Investment Group and has a very credible Wikipedia page outlining his real estate experience.

7. Mr. Primo sent me an email, a copy of which is attached hereto as Exhibit "E" confirming his strong interest. Mr. Primo's investors are scheduled to visit the property over the weekend. Mr. Primo has retained counsel in the person of Eric Decator, Esq. of Chicago, IL, who has been working with our bankruptcy counsel on a contract. A form of contract has been reviewed and circulated by our respective counsel in anticipation of Mr. Primo obtaining final approval from his investors. A copy of the proposed contract being negotiated by Mr. Decator and Mr. Nash, is attached hereto as Exhibit "F".

8. The Debtor remains very hopeful that the contract with Mr. Primo will be finalized, so that a closing can occur shortly. The purchase price is significant and will allow the Debtor to address and pay the allowed claims of the secured creditor.

9. I caused the filing of the Chapter 11 petition to be made based upon a subjective and objective belief that, although the situation was very difficult, the Debtor retained both the willingness and the ability to reorganize within a reasonable period of time. I believe that my efforts to buy out the Jangana Family and to obtain a viable contract for the property from a strong and credible buyer support the Debtor's subjective and objective beliefs regarding the good faith of the Chapter 11 case. The case should not be dismissed, and instead, the Debtor should be afforded the full 90 days to file a confirmable plan as provided by the Bankruptcy Code in a single asset real estate case.

Dated: New York, New York
October 12, 2022

_____
Joel Schreiber