UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                              Chapter 11

Broadbridge LA LLC,                                                      Case No. 22-72048-LAS

                                            Debtor.
---------------------------------------------------------------x

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE**

PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT BEARS UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. THE DEBTOR BELIEVES THAT APPROVAL OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALLOWED CLAIMS IN BANKRUPTCY.

**I.  INTRODUCTION**

This disclosure statement (the "Disclosure Statement") is submitted on behalf of Broadbridge LA LLC (the "Debtor") pursuant to Section 1125(b) of Title 11 of the United States Code (the "Bankruptcy Code"). The Disclosure Statement is filed in connection with the Debtor's accompanying Chapter 11 Plan of Liquidation (the "Plan") to provide creditors with relevant information relating to the proposed treatment and disposition of their respective claims in bankruptcy.

The Plan is predicated upon a relatively prompt sale of the Debtor's real property at 801 South Broadway, Los Angeles, California (the "Property") to Capri Investor LLC or its designee ("Capri") (once the deposit is received and due diligence is completed) for a total purchase price of $325 million. Because the proposed purchase price is sufficient to pay all creditors in full, all classes of claims are deemed unimpaired under the Plan, and the Debtor does not believe that it will be required to solicit actual votes. Thus, this Disclosure Statement is mainly submitted for

1

informational purposes to provide creditors with relevant information relating to the status of the contact and the anticipated timing of the sale process.

As with most liquidating plans, the sale proceeds (if the transaction closes) shall be used to pay the allowed claims of creditors in full at the closing (which is deemed the Effective Date for purposes of the Plan). As of the date hereof, Capri has executed a written contract of sale dated October 27, 2022 (the "Contract"). Quinto Primo of Capri has indicated that there were certain delays in receiving the deposit of $9.5 million from his investors, which he expects to be rectified shortly. Once the deposit has been received, the Debtor shall supplement this Disclosure Statement. If the deposit is not received by November 9, 2022 (November 8 being Election Day and some banks potentially being closed), the Debtor will not proceed with Capri as the buyer. The Contract is subject to limited due diligence, which expires on November 15, 2022. The Debtor remains hopeful that the deposit will be tendered, and due diligence period will pass without termination, whereupon the Debtor intends to file a separate motion (the "Sale Motion") for approval of the sale of the Property to Capri as a private sale without competitive bidding. The sale of the Property shall be free and clear of all liens, claims, taxes, judgments, adverse interests and non-permitted encumbrances pursuant to 11 U.S.C. §§363(b) and (f) and 1123(a)(5)(D) (the "Sale"). The hearing on the Sale Motion shall be held in conjunction with the hearing on confirmation of the Plan. Entry of the Confirmation Order may also be deemed final approval of the Sale, with a closing to occur shortly thereafter.

## II.    THE PURPOSE OF THE DISCLOSURE STATEMENT

The purpose of the Disclosure Statement is multi-faceted, including (i) updating creditors relating to the status of the Sale; (ii) explaining the terms and distributions under the Plan; (iii) advising creditors of their rights in bankruptcy; and (iv) providing information to determine

whether the Plan complies with the provisions of Chapter 11 of the Bankruptcy Code and should be confirmed. In this bankruptcy case, since all creditors are deemed unimpaired. This Disclosure Statement is not necessarily submitted for its conventional purpose of enabling creditors to make an informed decision relating to voting on the Plan.

NO PERSON IS AUTHORIZED IN CONNECTION WITH THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ANNEXED HERETO OR INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU.

THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE DEBTOR AS OF THE DATE HEREOF. ALTHOUGH THE DEBTOR HAS USED BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED. THE DEBTOR BELIEVES THAT THIS DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND/OR THE DATE THAT THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO CONFIRMATION OF THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST THE DEBTOR.

**THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. EACH CREDITOR IS ENCOURAGED TO READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.**

### Recommendation

The Sale of the Property (if the transaction clears due diligence and closes) is clearly the best possible result for all concerned. It will provide a far better and quicker recovery than anything which likely could to be achieved under Chapter 7 or a state court foreclosure. Accordingly, the Debtor believes that confirmation of the Plan should be embraced by creditors.

### III.    SUMMARY OF PLAN PAYMENTS

Based upon the anticipated purchase price of $325 million (subject to closing costs and adjustments), the Plan is the vehicle to distribute the proceeds thereof to the holders of Allowed Claims in accordance with the bankruptcy priority scheme under 11 U.S.C. §507 beginning with payment of all allowed secured debt of the Class 1 creditor.

| Class & Description | Amount | Estimated Recovery to Holders of Allowed Claims |
|---|---|---|
| Unclassified Administrative Expenses | Projected Professional Fees of $200,000 U.S. Trustee Fees $250,000 | To be paid in full |
| Unclassified Priority Taxes | All accrued and outstanding unpaid real estate taxes | To be paid in full |
| 1 | Allowed Senior Secured Claim of Museum Building Holdings LLC (the "Lender"), in the principal sum of $222,453,522, plus allowed accrued interest, advances, fees, and expenses. To date, the Lender alleges that it is owed $280,643,862 as of November 9, 2022. | To be paid in full in the amounts ultimately allowed by the Bankruptcy Court after reconciliation and possible objection. All undisputed portions of the Lender's Claim projected to be at least $222,453,522, plus non-default interest and advances, shall be paid at closing, with appropriate reserves established for the disputed portions of the Lender's total Claim pending resolution. |

| 2 | Allowed General Unsecured Claims as scheduled or filed totaling at least $15,831,876.30. | To be paid in full in amounts ultimately allowed by the Bankruptcy Court after reconciliation and possible objection, with appropriate reserves established for the disputed portions of any Class 2 Claims. |
|---|---|---|
| 3 | Equity Interest | Joel Schreiber is eligible to receive all surplus proceeds based upon his pending acquisition of the membership interests (45%) of the Jangana Family (subject to Lender consent). |

## IV. THE CONFIRMATION PROCESS

This Disclosure Statement has been prepared by the Debtor in consultation with its attorneys, Goldberg Weprin Finkel Goldstein LLP. The Disclosure Statement has been conditionally approved by the Bankruptcy Court as containing adequate information within the meaning of 11 U.S.C. §1125. The Bankruptcy Court's conditional approval of this Disclosure Statement, however, does not constitute an endorsement of the Plan, and creditors have the right to object to the Plan, and are urged to review the Plan in its entirety.

### A. Combined Confirmation and Disclosure Hearing

The Bankruptcy Court has scheduled a combined hearing to consider both final approval of this Disclosure Statement and confirmation of the Plan on the same day and time, to wit, December __, 2022 at 10:00 a.m., prevailing New York Time (the "Combined Hearing"). The Combined Hearing shall be conducted by the Honorable Louis A. Scarcella at the U.S. Bankruptcy Court, 290 Federal Plaza, Central Islip, NY 17722. Parties wishing to participate in the Combined Hearing must either register with the eCourt Appearances platform as set forth on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/eCourtAppearances.pl?reginit=las or contact the Courtroom Deputy at las_hearings@nyeb.uscourts.gov, or (631) 712-6278, regarding the inability to register using eCourt Appearances platform.

At the Combined Hearing, the Bankruptcy Court shall determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied based upon a sale of the Property. Capri's ability to close and consummate the sale transaction will play a prominent point of emphasis at the Combined Hearing. The Debtor intends to file supporting certifications relating to all feasibility issues and the other elements required to confirm the Plan under Section 1129 prior to the Combined Hearing.

If confirmed, the Plan shall be binding upon the Debtor, its creditors, and its equity holders, whether or not such creditor or equity holder has accepted the Plan.

### B. Voting

Generally speaking, in order for the Plan to be accepted by each class of claims, a majority in number and two-thirds in dollar amount of the claims actually voting in an impaired class must vote to accept the Plan. Here, however, since all creditors are being paid in full with interest, no claims are impaired, and all classes of creditors are deemed to accept the Plan pursuant to 11 U.S.C. § 1126.

## V. THE DEBTOR

### A. Debtor's History

The Debtor's Property consists of a large commercial building consisting of approximately 920,451 square feet of leasable space located in the Historic Core neighborhood in Downtown Los Angeles, California. The Property was first acquired in 2014 for the sum of $128 million with the goal of redeveloping the site as a first-rate commercial and retail center.

While approximately $25 million has been expended on initial construction and renovation costs to date, the Property is still under renovation and development and likely needs more than $200 - $300 million to complete. Nevertheless, even in its current state of partial renovation and subject to receivership, the Property retains significant potential and was appraised in 2018 for $407 million. This value is the

Property's lower liquidating value, and the Property retains great potential value once development is completed.

Over the last two years and despite Covid-19, the Debtor attempted to market the Property for sale or refinance, while continuing to make substantial debt service of more than $115 million. During this period, the Debtor worked constructively, if not collegially with the Lender, which executed various forbearances following a maturity default in June 2020, but apparently ran out of patience, prompting the Lender's decision not to adjourn the foreclosure sale past August 9, 2022.

Faced with a looming foreclosure and no immediate sale prospect, Joel Schreiber, one of the beneficial owners of the Debtor called an emergency meeting to discuss options. Under a somewhat complex ownership structure, the Debtor's sole member is Broadbridge LA Member LLC, which in turn is owned by Western LA Holdco LLC, which at the time of the Chapter 11 filing was owned 55% by Mr. Schreiber's company, JS Western Holdco Member LLC ("JS Western"), and 45% by Jack Jangana and his sisters, Jenny Haim and Joyce Reiss (the "Jangana Family").

Having devoted years of his life to the project, Mr. Schreiber advocated at least attempting a final effort at selling the Debtor's Property under the limited window presented by a Chapter 11 bankruptcy filing. However, the Jangana Family were concerned about potential personal liability under a so-called "bad guy" guaranty that might become effective if they supported a bankruptcy filing. Thus, Mr. Schreiber determined that the Jangana Family's failure to consent to a Chapter 11 filing was "unreasonably withheld, conditioned or delayed" under the applicable Operating Agreement. As manager, Mr. Schreiber authorized the Chapter 11 filing, which was accomplished on August 9, 2022, less than one hour before the scheduled foreclosure sale.

    **B.**     **Major Events During the Chapter 11 Case**

        **1.**     **Motion to Dismiss**

Two weeks after the filing, the Lender filed a motion to dismiss, predicated on three arguments: (i) that the filing at the 11th hour before the foreclosure sale was in bad faith; (ii) that

7

the Chapter 11 filing violated the Debtor's operating agreement, which required unanimous prior consent of independent directors appointed pursuant to the underlying loan documents with the Lender; and (iii) that Mr. Schreiber lacked authority to file the petition without the consent of the Jangana Family.

The Debtor vigorously opposed the dismissal motion on multiple grounds, including (i) that the Debtor acted with subjective and objective good faith in seeking Chapter 11 relief; and (ii) that the consent of the so-called independent directors emanates out of an unenforceable "Blocking Provision".

Insofar as the Jangana family is concerned, the Debtor contends that they acted unreasonably in their refusal to consent to bankruptcy relief, although after the Chapter 11 filing, Mr. Schreiber, though JS Western, purchased the equity interest of the Jangana Family in Western LA Holdco LLC, subject to the consent of the Lender. As of the date hereof, a decision on the motion remains *sub judice*, and the Lender has not yet given its consent to a buy-out of the Jangana Family.

### 2. The Sale

In the meantime, the Debtor used the post-petition period to finalize negotiations with Capri to buy the Property. Capri has indicated it intends to fund the deposit of $9.5 million, following a brief delay. The Contract provides limited additional due diligence through November 15, 2022. The Debtor is hopeful that the deposit will be tendered, and due diligence period will pass, and closing will occur by December 15, 2022. A copy of the Contract is attached hereto as Exhibit "A".

Given the demands of the Lender for a prompt closing, the Debtor intends to seek approval of the Contract once due diligence expires, without competitive bidding, free and clear of all liens, claims, taxes, judgment, adverse interests and non-permitted encumbrances pursuant to 11 U.S.C. §363(b) and (f).

## VI. HIGHLIGHTS OF THE PLAN

The Plan is effectively a contract between the Debtor and its creditors regarding the disposition and treatment of their allowed claims in bankruptcy. The Plan provides for different classes of claims, which track the bankruptcy priority structure under 11 U.S.C. §507(b).

### A. Classification and Provisions for Treatment of Claims and Equity Interests

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classified and unclassified Claims against the Debtor. A Claim is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim.

**Non-Classified Claims**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and will be paid from Distributable Cash.

> **Administrative Claims.** Each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement and release thereof, a cash payment in full equal to such Allowed Administrative Claim, (i) as soon as reasonably practicable after the Effective Date or (ii) if the Administrative Claim is not Allowed as of the Effective Date, upon entry of an Order approving such Administrative Claim. The Administrative Claims consist of the U.S. Trustee and Professional Fees, which are projected to total $450,000.
>
> **Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement and release thereof, a cash payment in full equal to such Allowed Priority Tax Claim, (i) on or as soon as reasonably practicable after the Effective Date; or (ii) if the Priority Tax Claim is not Allowed as of the Effective Date, upon entry of an Order approving such Priority Tax Claim.
>
> **Professional Fee Claims**. All requests for payment by the Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP shall be filed on or before the Professional Fee Claim Bar Date and remain subject to Bankruptcy Court approval in accordance with Section 330 of Bankruptcy Code.

**Classified Claims and Equity Interests**

The following table designates the Classes of Claims and Interests and specifies which Classes are: (i) impaired or unimpaired by this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with Section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject this Plan.

| Summary of Classification and Treatment of Timely Filed Claims and Equity Interests | | | |
|---|---|---|---|
| **Class** | **Claim** | **Status** | **Voting Rights** |
| 1 | Secured Claim of Museum Building Holdings LLC | Unimpaired | Deemed to Accept because allowed Secured Claim of the Lender shall be paid in full. |
| 2 | General Unsecured Claims | Unimpaired | Deemed to Accept because the allowed Class 2 General Unsecured Claims shall be paid in full. |
| 3 | Equity Interest | Unimpaired | N/A |

**Class 1 (Allowed Secured Claim of Museum Building Holdings LLC).** Class 1 consists of the Lender's Allowed Secured Claim. The Lender has asserted a Secured Claim in the total sum of $280,643,825 as of November 9, 2020, which remains subject to final reconciliation and objection as to various components of the Claim relating primarily to default interest). The undisputed portion of the Class 1 Claim shall be paid in full on the Effective Date from the Distributable Cash with reserves to be established on the Effective Date for all disputed amounts pending further order of the Bankruptcy Court pursuant to Section 3.5.1, below.

**Class 2 (Allowed General Unsecured Claims).** Each holder of an Allowed Class 2 General Unsecured Claim shall receive full payment in its allowed claim on the Effective Date, together with interest from the Petition Date at the Federate Judgement Rate.

**Class 3 (Equity Interest).** The Equity Interest of Joel Schreiber shall be entitled to receive all surplus generated from the Sale of the Property after payment of the Lender's Allowed Class 1 Secured Claim in full with interest, Administrative Claims, Priority Claims and Allowed Class 2 Claims with interest.

B.      **Implementation and Execution of the Plan**

**Effective Date.**

The Plan shall become effective on the closing of the Property with the proceeds used to fund all distributions under the Plan.

**The Sale.**

A separate motion shall be filed for approval of the Sale of the Property to Capri free and clear of all liens, claims, taxes, judgments, adverse interests and non-permitted encumbrances pursuant to 11 U.S.C. §§363(b) and (f) and 1123(a)(5)(D). The hearing on the Sale motion shall be held in conjunction with the Confirmation of this Plan. The Plan shall be funded by receipt and collection of the sale proceeds which shall be paid by the Disbursing Agent directly at the closing to the holders of Allowed Claims.

**Avoidance Actions**

The Debtor's estate shall retain all rights to commence Avoidance Actions. Any recoveries obtained in connection with pursuit of Avoidance Actions shall be added to Distributable Cash for distribution to creditors of the equity holder as surplus.

**Procedures for Treating and Resolving Disputed Claims.**

No payments or distributions shall be made with respect to a Disputed Claim (or a portion thereof) on the Effective Date.

> Distribution Reserve. The Disbursing Agent shall establish appropriate reserves for Disputed Claims (the "Disputed Claim Reserve") from Distributable Cash. The Disputed Claim Reserve shall be a separate fund established to pay Disputed Claims if and when allowed. The Disbursing Agent may also request estimation of any Disputed Claim that is contingent or unliquidated as part of the process of establishing a Distribution Reserve.

> Distributions After Allowance. Payments and distributions from the Disputed Claims Reserve, to the extent that such Disputed Claims ultimately become an Allowed Claim, shall be made upon entry of a Final Order allowing such Disputed Claims.

**Term of Injunctions or Stays.**

All injunctions or stays pursuant to Section 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the close of the bankruptcy case. Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, all Creditors who have held, hold, or may hold Claims against in the Debtor, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Debtor, on account of any such Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor; and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, or against the property or interests in property of the Debtor, except to the extent such right is asserted in connection with a timely filed proof of claim or real property lease.

**Transfer Tax Exemption.**

The sale of the Property to Capri shall constitute a "transfer under a plan" within the purview of Section 1146(a) of the Bankruptcy Code. The transfer of the Property by the Debtor shall not be subject to any deed transfer, stamp or similar taxes arising under state or local law.

**Condition to Confirmation.**

The sole condition to confirmation of the Plan shall be entry of a Confirmation Order by the Bankruptcy Court in form and substance reasonably satisfactory to the Debtor and Capri providing for the sale of the Property free and clear of all liens, claims, taxes, judgments, adverse interests and non-permitted encumbrances pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123 based upon a transfer tax exemption under 11 U.S.C. § 1146(a).

**Retention of Jurisdiction.**

Post-Confirmation Order, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, or amount of any Claim including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance of Claims;
>
> Decide and resolve all matters related to the granting and denying, of any Professional Fee Claims;
>
> Ensure that distributions to holders of Allowed Claims are effectuated pursuant to the provisions of the Plan;
>
> Adjudicate any motions, adversary proceedings, applications, objections or other contested matters that may be pending on the Effective Date;
>
> Enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan.
>
> Adjudicate any and all disputes arising from or relating to distributions under the Plan, or any transactions contemplated herein;
>
> Consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency with the Confirmation Order;
>
> Enter an Order concluding or closing the bankruptcy case.

## VII. REQUIREMENTS FOR CONFIRMATION

The Bankruptcy Court will confirm the Plan if all of the applicable requirements of 11 U.S.C. §1129(a) are met, including the core determinations that: (i) the Plan complies with the requirements of the Bankruptcy Code, (ii) the Debtor has proposed the Plan in good faith, (iii) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (iv) the Plan pays creditors at least as much as they would receive in a liquidation (the "Best Interests Test"), and (v) the Plan is feasible.

The Debtor believes that it will be able to satisfy all applicable statutory requirements under Section 1129(a) in order to obtain confirmation of the Plan so long as due diligence expires, and Capri closes on the sale of the Property. A sale price of $325 million will enable the Debtor to satisfy all claims in full, and thereby satisfy of the elements of 11 U.S.C. §1129(a). A liquidation analysis will be filed as a supplement once the limited due diligence period expires on November 15, 2022.

## VIII. CONCLUSION

The Debtor submits that the Plan and underlying sale of the Property (if consummated) provides for the best possible outcome for creditors.

Dated: New York, New York
      November 7, 2022

| Broadbridge LA LLC | Goldberg Weprin Finkel Goldstein LLP |
| --- | --- |
| | Attorneys for the Debtor |
| | 1501 Broadway, 22nd Floor |
| | New York, New York 10036 |
| | (212) 221-5700 |
| By:   /s/ Joel Schreiber | By:   /s/Kevin J. Nash, Esq. |