## Exhibit A

**Receivership Order**

```
 1  Meagen E. Leary (SBN: 233103)
    Marcus O. Colabianchi (SBN: 208698)
 2  DUANE MORRIS LLP
    One Market Plaza
 3  Spear Street Tower, Suite 2200
    San Francisco, CA 94105-1127
 4  Telephone: (415) 957-3000
 5  Facsimile: (415) 957-3001
    Email:  mleary@duanemorris.com
 6          mcolabianchi@duanemorris.com

 7  Daniel B. Heidtke (SBN 302450)
    DUANE MORRIS LLP
 8  865 South Figueroa, Suite 3100
    Los Angeles, CA 90017
 9  Telephone: (213) 689-7400
    Facsimile: (213) 689-7401
10  Email: dbheidtke@duanemorris.com

11  Attorneys for Plaintiff
    MUSEUM BUILDING HOLDINGS, LLC
12
```

FILED
Superior Court of California
County of Los Angeles

JUN -8 2022

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
   N. DiGiambattista

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| MUSEUM BUILDING HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BROADBRIDGE LA, LLC, a Delaware limited liability company; DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 22STCV17409<br><br>[~~PROPOSED~~] ORDER ON *EX PARTE* APPLICATION FOR (1) APPOINTMENT OF A RECEIVER, (2) TEMPORARY RESTRAINING ORDER, AND (3) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER<br><br>Date:  June 8, 2022<br>Time:  8:30 a.m.<br>Dept.:  82<br><br>Date Action Filed:  May 26, 2022<br>Trial Date:  None Set |

The Court, having read and considered the Verified Complaint of plaintiff MUSEUM BUILDING HOLDINGS, LLC, a Delaware limited liability company ("Plaintiff"),[1] in this action, and Plaintiff's *ex parte* application for the appointment of a receiver, temporary restraining order,

---

[1] Any capitalized words in this Order, if not defined herein, shall have the meaning given to them in the Application.

and preliminary injunction ("Application"), together with all other pleadings and papers filed by the parties, and upon hearing the arguments of counsel, and finding good cause therefor,

**IT IS HEREBY ORDERED** as follows:

### APPOINTMENT OF RECEIVER

1. <u>APPOINTMENT OF RECEIVER</u>:  Kevin Singer of Receivership Specialists is appointed as receiver (the "Receiver") in this action effective immediately.

2. <u>OATH</u>.  The Receiver shall file an oath pursuant to Code of Civil Procedure section 567(a).

3. <u>PLAINTIFF'S BOND</u>.  Plaintiff shall post an undertaking in the sum of $ 10,000 pursuant to Code of Civil Procedure section 529(a) and Rule of Court 3.1150.

4. <u>RECEIVER'S BOND</u>.  The Receiver shall post an undertaking in the sum of $25,000 to the effect that the Receiver will faithfully discharge his duties and obey the orders of this Court pursuant to Code of Civil Procedure section 567(b).  The Receiver shall be allowed the cost of this undertaking.

5. <u>RECEIVER'S FEES</u>.  The Receiver may charge for the Receiver's services at the Receiver's standard billing rate of $ 295.00 per hour, billed at a minimum of 0.2 per hour.

6. <u>PROPERTY MANAGEMENT</u>.  Upon Plaintiff's consent, the Receiver may employ a property manager for the Property.

7. <u>THE RECEIVERSHIP ESTATE</u>.  The "Receivership Estate" or "Property," as those terms are used herein, comprises all of the real, personal, tangible and intangible property of BROADBRIDGE LA, LLC, a Delaware limited liability company ("Borrower"), described in the Verified Complaint in this action, and any other collateral that secures the Loan as described in the Verified Complaint.  Without limiting the foregoing, the Receivership Estate includes, without limitation:

    a. real property that is located at 826 and 832 South Hill Street and 801 South Broadway, City and County of Los Angeles, California and commonly known as "The Museum Building", and is more particularly described and as more particularly described in **Exhibit A** attached hereto; and

b.    all personal property, including, but not limited to, cash and security deposits derived from the Receivership Estate, rents, profits, and all maintenance materials, supplies, equipment and tools.

8.    <u>POSSESSION BY THE RECEIVER</u>.    After filing his oath and bond, the Receiver shall take immediate possession of the Receivership Estate.

9.    <u>POWERS AND DUTIES OF RECEIVER</u>:    The Receiver shall have all powers, duties and authorities as are provided by law to use, operate, manage and control the Receivership Estate, to collect and receive any and all rents, sub-rents, lease payments, profits and other income from the Receivership Estate, to protect, preserve, improve and maintain the Receivership Estate, and to incur expenses that are necessary and appropriate to care for, preserve and maintain the Receivership Estate.    Without limiting the foregoing, the Receiver's powers and duties shall specifically include:

a.    The Receiver shall, within thirty (30) days of qualification hereunder, file with this Court an inventory of all property of which the Receiver shall have taken possession pursuant to this Order, and any other property of which she shall subsequently come into possession, and the Receiver shall conduct periodic accounts thereafter.

b.    The Receiver shall collect all rents, profits and other income from the Property, wherever they may exist.

c.    The Receiver may without the Plaintiff's approval enter into leases for a term not exceeding one year, obtain and evict tenants, and set and modify the amounts and terms of leases.

d.    Monies coming into the possession of the Receiver and not expended for necessary operating expenses or any other purposes authorized by this Order shall be held by the Receiver in one or more bank accounts at such federally-insured banking institutions as the Receiver shall select, subject to such further orders as this Court may hereafter issue as to the disposition of such monies.    The Receiver shall not use the money coming into his possession to reduce the debt of Borrower owed to Plaintiff except upon further order of this Court.    Within ten (10) days after the last day of each month, the Receiver shall serve on the parties, through counsel, a

report, including statements of account for the Property, for the funds received by the Receiver, and for the expenses incurred or paid by the Receiver for that month. The Receiver need not file such monthly reports with this Court.

   e. Subject to further order of this Court, the Receiver shall operate and manage the Property. The Receiver shall pay only those bills that are reasonable and necessary for the operation or the protection of the Property for the period after the entry of this Order until termination of the receivership and shall allocate funds in the following order of priority: (1) the costs and expense of the Receivership Estate including utilities, insurance premiums, general and special taxes or assessments levied on the real property and improvements thereon; (2) the creation and retention by the Receiver of a reasonable working capital fund; and (3) all monies coming into the Receiver's possession shall only be expended for the purposes herein authorized, and the balance of funds shall be held by the Receiver pending further order of this Court. Notwithstanding the foregoing, the Receiver is to make no payment for accrued liabilities of Borrower existing prior to this Order other than expenses that in his reasonable judgment are necessary or proper to preserve and protect the Property.

   f. To the extent applicable, the Receiver shall make no refunds of security deposits, unless such security deposit has previously been turned over or otherwise paid to the Receiver in good and sufficient funds.

   g. As appropriate, the Receiver may notify all necessary local, state and federal governmental agencies of his appointment as the Receiver, including the California Franchise Tax Board, the Internal Revenue Service and the California Board of Equalization.

   h. The Receiver shall, upon taking possession of the Property, immediately determine whether, in the Receiver's judgment, there is sufficient insurance coverage for the Property (which shall at a minimum meet the requirements under the Loan Documents) and shall notify the parties herein of his determination. If sufficient coverage does exist, the Receiver will have himself and the property managers named as additional insureds on the policy or policies for the period that they are in possession of the Property. If sufficient insurance coverage does not exist, including coverage for any actions taken by the Receiver within the scope of his receivership,

the Receiver shall immediately so notify the parties to this lawsuit and shall procure, within ten (10) days, sufficient insurance for the Property, provided there are funds in the Receivership Estate available to do so. The Receiver shall not be personally liable for any uninsured claims arising prior to the time that sufficient insurance is in place and in force. Borrower shall immediately advise the Receiver about the nature and extent of insurance coverage on the Receivership Estate, immediately name the Receiver and Receiver's property managers as additional insureds on each insurance policy on the Receivership Estate and not cancel, reduce, or modify the insurance coverage.

   i. The Receiver shall take receipt of any mail addressed to Borrower at the Property, for the purpose of opening that mail and taking receipt of payments payable with respect to the Receivership Estate.

   j. The Receiver shall not place or suffer any encumbrances on the Property without the prior Court approval. To the extent deemed appropriate by the Receiver, the Receiver may apply to Plaintiff to borrow additional funds to enable the Receiver to perform his duties and satisfy his costs and expenses hereunder. Plaintiff shall have the right, but not the obligation, in Plaintiff's sole and absolute discretion, to pay as and when due, or to lend to the Receiver, all or any portion of such requested funds, in which event all such funds paid or lent shall be deemed to be additions or protective advances secured by Plaintiff's existing liens under the Deed of Trust, and shall be recoverable by Plaintiff at its option directly from the Receivership Estate.

   k. The Receiver is authorized to retain the services of and enter into contracts with maintenance and repair companies, licensed engineers or other building professionals, and environmental consultants and contractors as the Receiver may select, and as the Receiver may deem necessary or appropriate to properly investigate, monitor and/or remediate any conditions or issues pertaining to the Property. The Receiver is further authorized to engage such architects, engineers and other consultants as may be required to evaluate, maintain and preserve the entitlements and/or permits relating to the development of the Property.

   l. If so requested by Plaintiff, the Receiver is authorized to market and sell the Property and to take such actions as are necessary to effectuate a private sale of the Property. In

carrying out these duties, the Receiver is authorized to retain properly qualified real estate professionals, including, but not limited to, a real estate appraiser, broker and/or agent to list and market the Property. Any sale is subject to Plaintiff's written consent and further order of this Court. The Receiver shall be entitled to a commission in an amount to be determined by Plaintiff. Said amount shall be a percentage of the sale price of the Property and payable at the close of escrow from sale proceeds; provided, however, that the Receiver's commission shall be a portion of, and not in addition to, any commission paid to real estate brokers involved in the listing and sale of the Property.

     m.     In performing his duties, no risk or obligation shall be the personal risk or obligation of the Receiver, but rather shall be solely the risk or obligation of the Receivership Estate.

     n.     Upon receipt by the Receiver of a Sheriff's or Marshall's Deed of Sale after judicial foreclosure, or a Trustee's Deed Upon Sale after non-judicial foreclosure, or a notice from Plaintiff that Borrower has cured Borrower's existing defaults under the Loan Documents, or a notice that Plaintiff has accepted a deed in lieu of foreclosure or foreclosed upon certain Property in accordance with Article 9 of the Uniform Commercial Code, or a notice that there has been some other settlement agreement between Plaintiff and Borrower, the Receiver shall immediately turn over possession, custody and control of the Property that was the subject of any foreclosure, sale or settlement to either Plaintiff, Borrower or to the successful purchaser, whichever is appropriate, without further order of this Court (unless there is an order requiring the Receiver to continue in possession and control of the applicable Property). Upon such turnover of possession, the Receiver shall then be divested of possession, custody and control of the applicable Property and, if consistent with existing law, the Receiver shall have no further liability as to the applicable Property. Discharge of the Receiver shall require an order of this Court after filing of the Receiver's Final Accounting and exoneration of the Receiver's bond.

     o.     The Receiver shall have no obligation to prepare or file tax returns on behalf of Borrower.

p.  The Receiver shall not be responsible for payment of any utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone), unpaid payroll expenses, unpaid service vendor invoices, unpaid supply vendor invoices or other unpaid invoices incurred by, or the benefit of, the Property prior to the Receiver's taking possession of the Property. ~~Utility companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone are directed not to demand~~ additional deposits or to discontinue service. The Receiver is authorized to open new customer accounts with each utility that provides services to the Property, or require Borrower to name the Receiver as an authorized user of any of the existing utility accounts for the Property.

~~q.  The Receiver may employ general counsel, unlawful detainer attorneys and eviction services without further Court order.~~

r.  The Receiver may also terminate or retain as Borrower's employees, existing employees of Borrower or related parties in order to continue any business operations with respect to the Property, and in case of such retention all payroll taxes, workers' compensation insurance, and related costs will be carried and reported as those of Borrower or such related parties, and not of the receivership estate.

s.  The Receiver may use any federal taxpayer identification numbers relating to the Receivership Estate for any lawful purpose.

t.  The Receiver may reject, in accordance with applicable law, any unexpired leases or contracts of Borrower which are, in the Receiver's judgment, burdensome on the Receivership Estate.

u.  The Receiver shall operate the Receivership Estate, to preserve, protect, and secure the Property, take possession of all accounts and all books and records relating to the Receivership Estate. The Receiver shall have authority to determine and proceed with any entitlements and/or any permits relating to the Property, and to take any action to maintain in effect such entitlements and/or permits *upon approval of the court*. The Receiver shall have the authority to change signatures to the Receiver on signature cards for existing accounts, and to transfer existing accounts, or funds in

7

[PROPOSED] ORDER ON APPLICATION FOR APPOINTMENT OF A RECEIVER, TRO, AND OSC

existing accounts, into account(s) established by the Receiver. The Receiver shall have the authority to receive and endorse checks constituting income from the Property.

10. <u>NONINTERFERENCE WITH RECEIVER AND TURNOVER OF PROPERTY.</u>

    a. Borrower and its representatives, and all other persons in active concert and participation with them, shall fully cooperate in immediately making available and turning over to the Receiver all Property, keys to the Property and the originals (or, with the Receiver's consent, copies) of all books, records, ledgers, bank records, documents, subcontracts, contracts, computer software, tax ID numbers, and other business records wherever located relating to the Property.

    b. Except as may be otherwise ordered by this Court, Borrower and its respective representatives, and all other persons in active concert and participation with them, are hereby restrained and enjoined during the pendency of the receivership from doing, directly or indirectly, any of the following:

        i. Interfering with the possession, operation, control and maintenance of the Receivership Estate;

        ii. Demanding, collecting, receiving or in any other way diverting or using any of the proceeds derived from the Property;

        iii. Committing or permitting any waste of the Property, or any part thereof, or suffering or committing or permitting any acts on the Property or any portion thereof in violation of law, or removing, transferring, encumbering or otherwise disposing of any of the Property or any portion thereof;

        iv. Commingling, hypothecating, converting, concealing, conveying, assigning, misappropriating, misusing or otherwise transferring any of the monies derived from the Property or from using any of monies derived from the Property for any purpose except to turn them over to the Receiver;

        v. Transferring, concealing, destroying, defacing or altering any of the instruments, documents, ledger cards, books, records, printouts or other writings relating to the Property, or any portion thereof; and

        vi.    Interfering with or hindering in any manner whatsoever the Receiver in the performance of his duties herein described or in the performance of any duties incidental thereto.

    11.    **BANKRUPTCY– PLAINTIFF'S DUTY TO GIVE NOTICE.** If Borrower files a bankruptcy case during the receivership, Plaintiff shall give notice of the bankruptcy case to this Court, to all parties, and to the Receiver as soon as practicable after the day on which Plaintiff receives notice of the bankruptcy filing.

    12.    **BANKRUPTCY – RECEIVER'S DUTIES.** If the Receiver receives notice that a bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this Order, the Receiver shall have the fallowing duties:

    a.    The Receiver shall immediately contact Plaintiff and determine whether Plaintiff intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the Receiver's obligation to turn over the property (11 U.S.C. § 543). If Plaintiff has no intention to make such a motion, the Receiver shall immediately turn over the Receivership Estate to the appropriate entity – either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession – and otherwise comply with 11 U.S.C. § 543.

    b.    If Plaintiff intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Receivership Estate, the Receiver may remain in possession and preserve the Receivership Estate pending the ruling on those motions (11 U.S.C. § 543(a)). The Receiver's authority to preserve the Receivership Estate shall be limited as follows:

        i.    The Receiver may continue to collect rents and other income;

        ii.    The Receiver may make only those disbursements necessary to preserve and protect the Receivership Estate;

        iii.    The Receiver shall not execute any new leases or other long-term contracts; and

        iv.    The Receiver shall do nothing that would effect a material change in the circumstances of the Receivership Estate.

c. If the bankruptcy court enters an order or Plaintiff fails to file a motion within 30 days after receipt of actual notice of the bankruptcy filing, the Receiver shall immediately turn over the Receivership Estate to the appropriate entity – either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession – and otherwise comply with 11 U.S.C. § 543.

d. The Receiver may apply to the bankruptcy court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

13. <u>PAYMENT OF RECEIVER FEES</u>. The Receiver is authorized to prepare periodic interim statements reflecting the Receiver's fees and administrative and management costs incurred in the operation and administration of the Receivership Estate. Upon completion of an interim statement, and mailing or emailing a copy to the parties' respective attorneys of record or any other designated person or agent, the Receiver may pay from funds in the Receivership Estate, if any, the amount of said statement. Notwithstanding the periodic payment of the Receiver's fees and administrative expenses, said fees and expenses shall be submitted to this Court for its approval and confirmation, in the form of either a noticed interim request for fees, a stipulation among all the parties, or the Receiver's Final Accounting. Plaintiff shall have the option to make payments to the Receiver for his interim fees, subject to this Court's approval of such fees.

14. <u>FURTHER INSTRUCTIONS</u>. It is further ordered that the Receiver, Plaintiff, and Borrower may, at any time, apply to this Court for further instructions and for further powers necessary to enable the Receiver to perform his duties.

**TEMPORARY RESTRAINING ORDER PENDING ORDER TO SHOW CAUSE HEARING**

Borrower BROADBRIDGE LA, LLC, a Delaware limited liability company, DOES 1 to 50 (collectively, the "Defendants") and their agents, employees and representatives, and all persons or entities acting under or in concert with Defendants, are restrained and enjoined from transferring, concealing, destroying, defacing or altering any of the books and records for the Property, and any personal property and rents or other income related to or derived therefrom.

Pending the hearing on the Order to Show Cause, the Defendants shall establish an account for the purpose of segregating the security deposits, issues, rents, income, profits, revenues, royalties, storage unit rentals or lease payments of the Property whenever collected, shall deposit the proceeds of same into the account so established, and shall be prohibited from making any expenditures from said account, so the same can be turned over to the Receiver.

### ORDER TO SHOW CAUSE

Pursuant to California Rules of Court, Rule 3.1176, it is ordered that, on June 30, 2022, at 1:30 pm, Defendants shall appear before this Court, in Department 82 to show cause, if any, why the appointment of the Receiver should not be confirmed, why the Receiver should not take possession and continue in possession of the Property described in **Exhibit A** hereto, manage and control the Property in accordance with this order, and why Defendants should not be prohibited from controlling or receiving any income from the Property. and why an injunction should not issue in the same form as the TRO.

Should Defendants desire to oppose the appointment and confirmation of the Receiver, Defendants shall file and personally serve or serve by telecopy opposition papers on Plaintiff's counsel, Meagen E. Leary, Marcus O. Colabianchi and Daniel B. Heidtke of Duane Morris LLP, by electronic mail no later than 3:00 p.m. on June 23, 2022. and moving papers

It is further ordered that service of this Order shall be effected upon the Defendants and/or their counsel through personal service or electronic mail, by no later than June 9, 2022, if agreed by Ds, and proof of such service shall be filed by Plaintiff's counsel with this Court ~~prior to the Order to Show Cause Hearing~~ by June 17, 2022. Any reply and POS by June 27, 2022

Dated: 6/8/22

_____
JUDGE OF THE SUPERIOR COURT

# EXHIBIT A

[Legal Description of Property]

REAL PROPERTY IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT "C" AS SHOWN ON MAP OF A RE-SUBDIVISION OF A PORTION OF BLOCK 52, OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGE 1 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LOT "C" INCLUDED WITHIN THE BOUNDARIES DESCRIBED AS FOLLOWS:

THAT PORTION OF BLOCK 52, OF THE HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHEASTERLY LINE OF HILL STREET, 92 FEET WIDE, DISTANT THEREON SOUTH 37° 42' WEST 177.25 FEET FROM THE SOUTHWESTERLY LINE OF EIGHTH STREET, 70 FEET WIDE, AS LOCATED BY THE CITY ENGINEER OF SAID CITY; THENCE ALONG HILL STREET SOUTH 37° 42' WEST 59.33 FEET TO THE NORTHEASTERLY LINE OF THE LAND DESCRIBED IN THE DEED TO KATE VAN NUYS PAGE, RECORDED ON SEPTEMBER 17, 1923 AS INSTRUMENT NO. 943 IN, IN BOOK 2396 PAGE 242 OFFICIAL RECORDS OF SAID COUNTY; THENCE ALONG SAID NORTHEASTERLY LINE SOUTH 52° 11' 20' EAST 160.70 FEET; THENCE NORTH 37° 56' EAST 59.38 FEET TO A LINE HAVING A BEARING OF NORTH 52° 12' 30" WEST WHICH PASSES THROUGH THE POINT OF BEGINNING; THENCE ALONG SAID LINE NORTH 52° 12' 30' WEST 160.94 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LOT "C" INCLUDED WITHIN THE PORTION OF THE SOUTHEASTERLY 6.00 FEET OF HILL STREET 92.00 FEET WIDE WHICH LIES NORTHWESTERLY OF AND ADJOINING THE LAND ABOVE EXCEPTED.

PARCEL 1A:

LOT 20 IN BLOCK 52, OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT "B" OF TRACT 2698, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 29 PAGE 89 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2A:

THAT PORTION OF LOUISA KALISHER'S HILL STREET LOT, AS PER MAP RECORDED IN BOOK 8 PAGE 34, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, PARTICULARLY DESCRIBED AS FOLLOWS:

A STRIP OF LAND LYING ADJACENT TO THE NORTHERLY LINE OF LOT "B" OF TRACT 2698 ABOVE DESCRIBED, AND HAVING A FRONTAGE OF 15 9/16 INCHES ALONG THE EASTERLY LINE OF HILL STREET AND A WIDTH OF 24 5/16 INCHES ON THE EASTERLY LINE OF SAID LOUISA KALISHER'S HILL STREET LOT AS SHOWN ON THE AFORESAID MAP.

PARCEL 3:

LOT "F" OF TRACT 2022, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 21 PAGE 92 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

THE NORTH 1/2 OF LOT "E" OF TRACT 655, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WHICH SAME LOT IS ALSO KNOWN AS THE NORTH 1/2 OF LOT "E" OF TRACT 419, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 14 PAGE 136 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 5:

THE SOUTH 1/2 OF LOT "E" OF TRACT 655, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WHICH SAME LOT IS ALSO KNOWN AS THE SOUTH 1/2 OF LOT "E" OF TRACT 419, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 14 PAGE 136 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 6:

PARCEL A:

THAT PORTION OF BLOCK 52, OF THE HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHEASTERLY LINE OF HILL STREET, 92 FEET WIDE, DISTANT THEREON SOUTH 37° 42' WEST 177.25 FEET FROM THE SOUTHWESTERLY LINE OF EIGHTH STREET, 70 FEET WIDE, AS LOCATED BY THE CITY ENGINEER OF SAID CITY; THENCE ALONG HILL STREET SOUTH 37° 42' WEST 59.33 FEET TO THE NORTHEASTERLY LINE OF THE LAND DESCRIBED IN THE DEED TO KATE VAN NUYS PAGE, RECORDED IN BOOK 2396 PAGE 242 OF OFFICIAL RECORDS OF SAID COUNTY; THENCE ALONG SAID NORTHEASTERLY LINE SOUTH 52° 11' 20" EAST 160.70 FEET; THENCE NORTH 37° 56' EAST 59.38 FEET TO A LINE HAVING A BEARING OF NORTH 52° 12' 30" WEST WHICH PASSES THROUGH THE POINT OF BEGINNING; THENCE ALONG SAID LINE NORTH 52° 12' 30" WEST 160.94 FEET TO THE POINT OF BEGINNING.

PARCEL B:

LOUISA KALISHER'S HILL STREET LOT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 8 PAGE 34 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LOT PARTICULARLY DESCRIBED AS FOLLOWS:

A STRIP OF LAND LYING ADJACENT TO THE NORTHERLY LINE OF LOT "B" OF TRACT 2698, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 29 PAGE 89 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF COUNTY, AND HAVING A FRONTAGE OF 15 9/16THS INCHES ALONG THE EASTERLY LINE OF HILL STREET AND A WIDTH OF 24 5/16THS INCHES ON THE EASTERLY LINE OF SAID LOUISA KALISHER'S HILL STREET LOT.

APN:
5144-017-028 (affects Parcels 3, 4 and 5)
5144-017-029 (affects Parcels 2, 2A and 6A and 6B)
5144-017-030 (affects Parcels 1 and 1A)